# EXHIBIT 9

Third Amended Complaint

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:

LIZA HAZAN
a/k/a ELIZABETH HAZAN,

Case No. 16-10389-AJC

Chapter 11

     Debtor.

_____/

LIZA HAZAN a/k/a ELIZABETH HAZAN
and SELECTIVE ADVISORS GROUP, LLC,

ADV. NO.: 16-1439-AJC

     Plaintiffs,

v.

NLG, LLC

     Defendant.

_____/

## THIRD AMENDED COMPLAINT

     Plaintiffs, LIZA HAZAN a/k/a ELIZABETH HAZAN and SELECTIVE ADVISORS GROUP, LLC (collectively, "Plaintiffs"), through their respective undersigned counsel and pursuant to Rules 7001, *et seq.*, of the Federal Rules of Bankruptcy Procedure, and 11 U.S.C. §§ 105, 363, 541, 542 and 544, sues Defendants, NLG, LLC, and Chris Kosachuk, and state and allege as follows:

### I.    JURISDICTION AND VENUE

     1.    This is an adversary proceeding for declaratory relief, for determination of the validity, priority and extent of lien(s) asserted by NLG, LLC and to avoid said lien(s) pursuant to 11 U.S.C. § 544.

2.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334.

3.      This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (K), and (O).

4.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1409.

## II.      PARTIES

5.      Liza Hazan ("Debtor") is an individual residing in Miami-Dade County, Florida.

6.      Selective Advisors Group, LLC ("Selective Advisors") is a Delaware limited liability company.

7.      NLG, LLC ("NLG") is a Delaware limited liability company.

8.      NLG is a wholly owned subsidiary of Meridian Trust Company, LTD, a Nevis Company with an address of Hunkins Plaza, Main Street, Suite 556, Charlestown, Nevis, West Indies.

9.      Chris Kosachuk is an individual who committed a tort against Plaintff, Liza Hazan, in Miami-Dade County, Florida, and is subject to the jurisdiction of this Court.

## III.      BACKGROUND

10.     Debtor is the owner of, and resides at, a residence located at 6913 Valencia Drive, Fisher Island, FL 33109 (the "Property").

11.     NLG's claim against the Debtor arises from an allegedpromissory note and mortgage on the Property in the amount of $1,275,000.00which resulted ina Final Judgment in favor of NLG against the Debtor on April 28, 2008, in the amount of $1,618,071.29 at interest rate of 11%.in Miami-Dade County, Florida ("the Scola Judgment") A true and correct copy of the Scola Judgment is attached hereto as Exhibit A.

12.     The alleged note and mortgage in favor of NLG was the subject of lengthy pending state court and federal court litigation in multiple states.Final orders have been entered in various courts setting forth the rights of these parties*inter se.* But the litigation nevertheless continued, and is now in this Court.

13.     On December 4, 2015, NLG obtained a Final Judgment of Foreclosureon the same alleged mortgage securing the same promissory note which resulted in the Scola Judgment. However, the final judgment in favor of NLG on the promissory note against the Debtor, the Scola Judgment was judicially assigned to Selective Advisors along with all attendant rights, claims and benefits against the Debtor Hazan on August 20, 2014.

14.     On or about April 21, 2014, 9197-5904 Quebec, Inc., as a judgment creditor of NLG, brought an action against NLG in Miami-Dade County Circuit Court, Case No. 14-10475, seeking to domesticate a New York Statefinal judgment entered against NLG and for proceedings supplementary to execute upon this foreign judgment.

15.     On or about May 5, 2014, the lawfully acquired foreign judgment against NLG was assigned to Selective Advisors. A copy of the Assignment of Judgment is attached hereto as ExhibitB.

16.     On June 16, 2014, Judge Peter Lopez ordered NLG to post a bond in the amount of $5,450,000 to avoid execution on the domesticated judgment.After no bond was posted, the State Court ordered execution on the $5,000,225.00 domesticated judgment against NLG and determined that Selective Advisors, as a result of the Assignment of Judgment, had all rights to execute against NLG.

17.     The State Court inquired into all of the issues relating to said Assignment of Judgment including consideration thereofand made specific determinations that NLG would be

credited against the amount of the New York Judgment with the sum of approximately $2,700,000.00, being the value and/or amount of the prior judgment on the promissory note and mortgage NLG was claiming to hold in Miami-Dade County, Florida against the Debtor entered on April 28, 2008, ("the Scola Judgment") in the amount of $1,618,071.29 at interest rate of 11%.

18.     Numerous hearings were held by the state court and all parties were afforded an opportunity to present evidence on the subject of the Foreign Judgment and proceedings supplementary resulting in numerous orders being entered by the state court. Judge Peter Lopez specifically judicially assigned the ScolaJudgment and all claims, benefits, rights held by NLG against the Debtor to Selective Advisors. A copy of the Order granting Selective Advisors Motion for Proceedings Supplementary Proceedings is attached hereto as Exhibit C.

19.     On or about August 20, 2014 Selective Advisors satisfied the NLG judgment and the mortgage against the Debtor and released the Debtor from all NLG'S claims. Selective Advisors gave a credit of $2,746,953.34 to NLG as per Judge Lopez's Court Order dated August 20, 2014. A copy of the Satisfaction of Judgment is attached as Exhibit D.

20.     On or about August 21, 2014 Selective Advisors satisfied the NLG mortgage against the Debtor and released the Debtor from all NLG'S claims. A copy of the Satisfaction of the Mortgage is attached as Exhibit E.

21.     NLG has unsuccessfully challenged the judicial assignment of the Scola Judgment to Selective Advisors against debtor in various courts.

22.     On October 30, 2014, NYC Supreme Court Judge Barbara Jaffeeordered:

> a. that the caption of this action is changed to substitute Selective Advisors Group, LLC in place of NLG;

       b.   that the New York County Clerk is directed to accept for filing the Florida Circuit Court Order of assignment, (the August 20, 2014, Judge Peter Lopez Order of assignment) judicially assigning the underlying Florida judgment(the Scola Judgment) from plaintiff to Selective Advisors;

       c.   that the County Clerk is directed to reflect on thedocket of this case that the Florida judgment (the Scola Judgment) between plaintiff against defendant, domesticated here, has been satisfied;

       d.   that the County Clerk is directed to accept for filing the satisfaction of judgment or other appropriate satisfaction piece; and it is further;and

       e.   ordered that the County Clerk is directed to remove and strike any judgments of record.

Attached as Exhibit Fis true and correct copies of theOrders entered by NYC Judge Barbara Jaffee.

23.     On October 1, 2015, NLG moved to vacate and cancel the Foreign Judgment and close the case. Based on the pleadings on file and the arguments of counsel, Judge Lopez entered an Order essentially denying said motion thereby, once again, confirming the rights of Creditor Selective Advisors.

24.     On October 26, 2015, NLG filed a motion to Reconsider or Rescind the Order Granting Selective Advisors' Motion for Proceedings Supplementary, and Strike The assignment of NLG's judgment against the Debtor the Scola Judgment to Selective Advisors. Once again, the State Court ruled on November 16, 2015, that "Defendant's Motion to Re-Consider or Rescind Non-Final Order Granting Plaintiff's Motion for Proceedings Supplementary and Order

Impleading Supplementary and Order Impleading Third Party is hereby Denied. Plaintiff's Motion to Strike Defendant's Motion to Reconsider or Rescind Non-Final Order Granting Plaintiff's Motion for Proceedings Supplementary and for OrderImpleading Third Party for Lack of Jurisdiction is hereby moot".The Order entered by Judge Lopez on November 16, 2015,denying NLG's motion to strike the assignment of the Scola Judgment to Selective Advisors is attached as Exhibit G. A copy of the Transcript of Court proceedings before Judge Lopez on November 10, 2015,was filed in this Court Docket Entry 81.

25.     On December 21, 2015, NLG's motion to restore its motion to vacate the Selective Advisors judgment in NYC Supreme Court was also denied.

26.     On January 11, 2016 Debtor filed for Chapter 11 bankruptcy protection.

27.     On January 29, 2016, NLG violated the Bankruptcy stay by filing a new action in United States District Court Southern District of New York without obtaining relief from stay from this Court.

28.     On July 20, 2016, United States District Court Southern District Of New York Chief Judge McMahon entered an Order stating that the Court would not sit as a Court Of Appeals over the New York State Supreme Court, confirming that NLG's motion to vacate Selective Advisors' Judgment was denied and the Selective Advisors Judgment against NLG was a lawful, valid and final judgment against NLG.

29.     Chief Judge McMahon also issued an Order to show cause why NLG's counsel should not be sanctioned for wasting the Court's time.A copy of the Order is attached as Exhibit H.

## IV.    CAUSES OF ACTION

### COUNT I – TO DETERMINE THE EXTENT, VALIDITY ANDPRIORITY OF NLG, LLC'S CLAIM OF LIEN

30.    The Plaintiffs incorporate and reallege paragraphs 1 through 29 of this Complaint as though fully set forth herein.

31.    Plaintiffs request a determination by this Court of the amount, extent, validity, perfection, priority and enforceability of NLG lien right(s) on the Property.

32.    A determination by this Court of the amount, extent, validity, perfection, priority and enforceability of the lien claimed by NLG is necessary for the proper administration of this estate.

33.    All conditions precedent to bringing this action have been performed or have occurred.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court enter an Order:

(a)    determining the extent, validity, perfection, priority, and enforceability of Defendant, NLG, LLC's claimed lien rights on the Property.

(b)    determining that the Defendant, NLG, LLC holds no lien on the Property;

(c)    determining,  alternatively, that the Defendant, NLG, LLC's lien rights are inferior to Selective Advisors; and

(d)    granting such other and further relief as this Honorable Court deems just and proper.

### COUNT II – AVOIDANCE OF NLG, LLC'S SECURITY INTEREST PURSUANT TO 11 U.S.C. § 544

34.    Plaintiffs incorporate and reallege paragraphs 1 through 29 of this Complaint as though fully set forth herein.

35.    NLG's Final Judgment against the Debtor and all rights, claims and benefits held against the Debtor were judicially assigned to Selective Advisors by operation of law.

36.    NLG's mortgage recorded against the subject property at Official Records Book 25559, at Pages4266-4272 of the public records of Miami-Dade County, Florida, as a security instrument securing payment of the note, is enforceable only by Selective Advisors as a matter of Florida law.

37.    Selective Advisors stood in the shoes of NLG with respect to all clams, rights, and benefits held by NLG so as to entitle it to recover all proceeds attributable to said judgment against Debtor.

38.    On August 31, 2014, Selective Advisors gave a credit to NLG in the sum of $2,746,953.34.

**WHEREFORE**, Plaintiffs, respectfully request this Honorable Court enter an Order determining avoidance of NLG, LLC's security interest pursuant to 11. U.S.C. § 544 and granting such other and further relief as this Honorable Court deems just and proper.

## COUNT III – QUIETTITLE

39.    Plaintiffs incorporate and reallege paragraphs 1 through 29 of this Complaint as though fully set forth herein.

40.    This is an action in which Plaintiff Hazan seeks to quiet title to the Property pursuant to Florida Statutes§ 65.081 and Florida Statutes § 65.011.

41.    At the time of the commencement of this action Hazan was in title and possession of the Property.

42.    None of the lands constituting the Property are held by the U.S. Government or the State of Florida and said governmental bodies have relinquished or conveyed all of their

right, title and interest in said Property as shown by the Public Records of Miami-Dade County, Florida.

43.    Hazan holds fee simple title to the Property as a result of the Warranty Deed from NLG, LLC to Elizabeth Hazan recorded at Plat Book 157, Page 64 of the Public Records of Miami-Dade County, Florida.

44.    Defendant NLG allegesan interest in the Property which clouds Plaintiff's title as a result of the following recorded instruments:

> That certain Order Granting Foreclosure in favor of NLG, LLC dated December 4, 2015, in Miami-Dade Circuit Court No. 11-42770-CA 02, recorded at Book 29902, Page 3737 of the Public Records of Miami-Dade County, Florida.

45.    The final judgment in favor of NLG was judicially assigned to Selective Advisors along with all attendant rights.  Judge Peter Lopez specifically judicially assigned all claims held by NLG against the Debtor to Selective Advisors including the rights to foreclose on Debtor's Homestead property.   A copy of the Order granting Selective Advisors Motion for Proceedings Supplementary Proceedings is attached hereto as Exhibit C.

46.    Any and all claims, right, title or interest of NLG to the Property have been extinguished as set forth above and Hazan is entitled to have her title to the Property quieted and confirmed by the Court.

47.    Hazan further represents that all things have been done and all events have occurred to vest true and good title in Hazan.

**WHEREFORE**, Plaintiff, Elizabeth Hazan, respectfully request this Honorable Court enter an Order determining Hazan to be the owner in fee simple to the Property and to have title

clear of any claims of NLG, LLC, and to have Hazan's title quieted and confirmed, and granting such other and further relief as this Honorable Court deems just and proper.

## COUNT IV –INTENTIONAL TORT

48.     PlaintiffHazan incorporates and realleges paragraphs 1 through 29 of this Complaint as though fully set forth herein.

49.     During the course of the litigation described above Chris Kosachuk and NLG have engaged in a concerted effort to harass, intimidate, defame and physically harm Hazan.

50.     Kosachuk acting individually and on behalf of NLG, has threatened Hazan with physical harm and has physically assaulted her.  He has attacked her vehicle while she was inside, has broken into her home and repeatedly attempted to do so again. He has sent her threatening messages.  He has threatened her legal counsels in an attempt to harass and intimidate Hazan. He has filed bar complaints and sanctions against her lawyers and has sued her lawyers. Kosachuk has offered to withdraw his claims against her lawyers if they agree to stop representingHazan in an effort to leave her without counsel.

51.     Kosachuk and NLG's wrongful actions include:

  (a) Kosachuk has stolen Debtor's mail,

  (b) Kosachuk has stalked Debtor numerous times during the course of litigation.

  (c) Kosachuk has threatened many of Debtor's lawyers in an effort to intimidate Hazan and cause her emotional upset. In the past he has knocked Darius Marzec, her New York attorney, to the ground and pushed Marzec'sface against the snow.  He has emailed Marzec, "Soon you will find yourself square in the cross-hairs and won't be able to hide behind all of your lawyering bullshit".

  (d) Kosachuk has impersonated Debtor and called her banks to find out personal

information in order to intimidate and harass her.

(e) Kosachuk has intimidated Debtor's previous clients, attempted to ruin her business and caused her millions of dollars of lost income.

(f) Kosachuk has harassed Debtor's clients. Kosachuk has permanently damaged her long term relationship with large national developers and clients of the Debtor and has caused her to lose millions of dollars of lost income. Kosachuk has harassed Debtor's client such as Texas de Brazil and Forest City Enterprises who subsequently refused to work with her because of Kosachuk's intimidation. The Debtor has suffered significant damages as a result.

(g) New York Judge Paul Feinman granted Debtor's motion for sanctions against Chris Kosachuk and NLG for their tortious conduct.

(h) Debtor filed numerous police reports and reports with Fisher Island security who have physically removed Kosachuk from Debtor's property. Kosachuk has impersonated other residents and used their Fisher Island security code to access Fisher Island and has lied to Fisher Island security to gain access to Fisher Island to come to the Island and threaten Debtor's life.

52. Kosachuk and NLG's action listed above are part of an ongoing attempt to harass, intimidate and harm Hazan. Past similar actions include:

(a) Kosachuk broke into Debtor's homestead residence located on Fisher Island, moved in for two months, painted the walls and removed personal property. Debtor, who was out of the country, after learning of the incident, filed an emergency motion to vacate the fraudulent Sheriff's deed obtained by NLG. Judge Scola granted Debtor's emergency motion, finding Kosachuk's actions

"unconscionable".

(b) After Judge Scola ordered Kosachuk and NLG to vacate the premises, Kosachuk refused to vacate Debtor's home. Judge Scola forced Kosachukto vacate the premises and ordered the Sheriffs of Miami-Dade County to evict him from Debtor's Fisher Island residence.

(c) Police reports of the incident document that Chris Kosachuk stole Debtor's furniture and seven (7) plasma televisions.

(d) Kosachuk has misused information provided in other litigation between Hazan and NLG to harass the Debtor and attempt to steal from her. He has removed Debtor's business associate, Raymond Houle as a signer of his own business bank account at Bank of America in an effort to obtain funds.

(e) Kosachuk has sent Debtor an email stating "your days are numbered" and told her that he would bury her alive.

(f) He has fraudulently named himself as the manager of World of Concepts, a business with which Houle was associated, also in an effort to obtain funds.

53.     The Defendants' conduct constitutes the deliberate, intentional and/or reckless infliction of mental suffering on the Plaintiff.

54.     The Defendants' conduct was so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency.

55.     The Defendant's conduct caused severe emotional distress to the Plaintiff and other significant damage, both emotional, physical and financial.

**WHEREFORE**, Plaintiff, Elizabeth Hazan, demands judgment against Chris Kosachuk and NLG, LLC, jointly and severally, for damages, and such other and further relief as this Honorable Court deems just and proper.

## COUNT V – DEFAMATION

56.    Plaintiff Hazan incorporates and realleges paragraphs 1 through 29 of this Complaint as though fully set forth herein.

57.    Kosachuk acting individually and on behalf of NLG, has defamed Hazan publicly.

58.    Defendants have defamed Hazan's character and damaged her reputation, defaming her in numerous newspapers, including the New YorkDaily News, the New York Post, Entertainment Tonight, and the Daily Business Review, including calling her a zero and a loser and other names.

59 .    Kosachuk and NLG filed a Judgment Lien Certificate with the Florida Secretary of State on April 28, 2008, claiming 11% interest on the Scola Judgment and claiming a total due of $1,618,071.29.  Kosachuk and NLG then filed a second Judgment Lien Certificate with the Florida Secretary of State on July 1, 2013, claiming 24% interest on the Scola Judgment and claiming a total due of $3,749,569.51. Then on August 19, 2014,Kosachuk and NLG filed a third Judgment Lien Certificate claiming that NLG was due $5,843,709.54 when in fact the outstanding judgment amount was $2,741,589.06 and a hearing had been held on August 12, 2014, resulting in the Judge Lopez order judicially assigning the Scola Judgment to Selective Advisors. Further, the successive filings did not replace the prior filings, but were in addition to the prior filings, causing Hazan financial harm.

60.    The Judgment Lien Certificate was clearly filed to cause Hazan financial embarrassment, damage to her personal and business reputation, loss of income and to cloud

title to her property.

61.    The Defendants' conduct has caused Hazan financial damages as well as damage to her personal and business reputation.

## COUNT VI- TRESPASS

62.Plaintiff Hazan incorporates and realleges paragraphs 1 through 29 of this Complaint as though fully set forth herein.

63.Kosachuk acting individually and on behalf of NLG,entered on the real property located on Fisher Island by walking across the property and actually entering the residence located on the property, without notice to Hazan and without her consent.

64. As a direct and proximate result of Kosachuk's trespassing upon Hazan's property, Hazan has suffered damages.

**WHEREFORE**, Plaintiff, Elizabeth Hazan, demands judgment against Chris Kosachuk and NLG, LLC, jointly and severally, for damages, and such other and further relief as this Honorable Court deems just and proper.

## COUNT VII. INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS

65.    Plaintiff Hazan incorporates and realleges paragraphs 1 through 29 of this Complaint as though fully set forth herein.

66.    As evidenced by the Public Records and documentsprovided to Kosachuk and NLG in March 2007, when the Property was acquired by Hazan, Defendants have direct knowledge of Hazan's mortgage lender, Washington Mutual, allegedly now Chase whose first mortgage note is secured by the Property.

67. Kosachuk and NLG have intentionally, unjustifiably, and directly interfered with Hazan's mortgage lender relationship by upon information and belief committing the following acts and omissions:

a) Defendants independently contacted Chase to arrange for the payment of the mortgage through rental income or direct payment by Defendants

b) Defendants advised Chase that Hazan had been delinquent in payments to NLG and that NLG was a judgment creditor of Hazan;

c) Defendants wrongly notified Chase that NLG was entitled to possession of the Property;

d)Defendants misrepresented their relationship to Hazan in order to obtain details from Chase about Hazan's payments and payoff.

68.Kosachuk and NLG have intentionally, unjustifiably, and directly interfered with Hazan's real estate agent relationships.

69. Defendants' sole motive in their actions set forth above is to interfere with Hazan's contractual rights and expectancies, so that her performance under the loan documents with Chase Bank, Valencia Estates Community Association and Fisher Island and settlements agreements with them are rendered impossible, and Hazan would be forced to sell or leasethe Property to Defendants at a substantial discount, resulting in a double profit, and unjust enrichment to Defendants. Defendants actions set forth above were perpetrated with ill will and without any useful purpose, or justification. .

70. The actions of Defendants have interfered with Hazan's business relations, have been financially detrimental to the affairs of Hazan, and have caused damages to Hazan.

WHEREFORE, Hazan demands judgment against Defendants, Kosachuk and NLG, jointly and severally, for damages, and for such other and further relief that this court deems just and proper.

## COUNT VIII-INVASION OF PRIVACY

71. Plaintiff, Hazan, realleges and reavers the allegations contained in paragraphs 1 through 29 as though fully rewritten herein.

72. The Property located on Fisher Island is Hazan's principal residence and her homestead and she maintains papers, personal property, photographs, letters, personal provisions, money, bank records, and other legal, business and financial papers at the Property and she has her mail delivered to the Property.

73. Several times during May, 2008, Defendant Kosachuk, individually and as an agent of NLG or through persons ordered by him, entered the Property without notice to Hazan and without her consent and outside of her presence.

74. Such unauthorized entry into Hazan's home in view of Hazan's neighbors and friends, and upon information and belief a real estate colleague of Hazan, constituted an illegal invasion of privacy of Plaintiff's home, and subjects Hazan to public ridicule, extreme humiliation, fear of wiretapping and the fear of the installation of hiddensurveillance equipment and has caused Hazan severe mental and emotional distress.

75. As a result of the acts and omissions of the Defendants, Hazan has been damaged.

76. Defendants conduct described herein was willful and malicious and with wanton disregard of the rights of Plaintiff.

WHEREFORE, Hazan demands judgment against Defendants, Kosachuk and NLG, jointly and severally, for damages, the right to seek leave to file for punitive damages and for such other and further relief that this court deems just and proper.

### COUNT IX- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

77. Plaintiff, Hazan, realleges and reavers the allegations contained in paragraphs 1 through 29 as though fully rewritten herein.

78. At all times material hereto since April 28, 2008, Defendant Kosachuk, individually and as an agent of NLG, without Plaintiff, Hazan's consent, violated her rights of privacy, subjected her to harassment and intimidation, and invaded her seclusion, solitude and private affairs by, but not limited to the following acts and omissions of the Defendants:

a) Several times during the past few years, Defendant Kosachuk individually or by his agents has entered the Property without notice to Hazan and without her consent and Kosachuk has threatened Hazan that he will continue to enter the Property until she executes a lease for the Property to him or his assigns, until she finds employment and assigns her wages to him, or otherwise satisfies the judgment formerly held by NLG and Kosachuk has further threatened bodily harm to Hazan to coerce her into paying him monies;

b)   Throughout November 2015, Kosachuk has called Hazan nearly every day, sometimes for multiple times each day; emailed Hazan; left voice mail messages for Hazan; personally entered her home in her absence so that he had unsupervised access to her personal property, business, financial and personal documents, mail, and household provisions;

c) Defendants contacted Hazan's realtors and mortgage lender; and  brought third persons to the Property to lease the same;

d) Kosachuk's persistent telephone calls are threatening to Hazan and obnoxious to the effect that he will personally hauntHazan until she pays her debts; that she will never earn a wage without paying Defendants first; that she has no right to live her life until

Defendants are paid; that he will throw her out of her home and she will be homeless; that she should call her family to pay her debts; that he will hurt her until she pays her debts to the Defendants.

79.     At all times when the telephone calls and emails were made, both Defendants and Hazan were represented by legal counsel relating to Defendants claims to collect monies allegedly due and owing.

80.     The threatening and harassing contact by Defendants to Hazan were made at various hours of the day or night, and intended to personally harass and embarrass Hazan and inflict mental and emotional distress upon her and expose her to public ridicule

81.     The continuing acts and omissions of Defendants have caused Hazan to lose sleep, fear for her life, hire personal security, suffer from embarrassment, humiliation, and otherwise caused her damages.

82.     Defendants conduct described herein was willful and malicious and with wanton disregard of the rights of Plaintiff.

83.     The acts and omissions of Defendants have causedHazan irreparable harm.

WHEREFORE Hazan demands judgment against Defendants, Kosachuk and NLG, jointly and severally, for damages, the right to seek leave to file for punitive damages and for such other and further relief that this court deems just and proper.

Respectfully submitted, January 3, 2017.

**LAW OFFICES OF DAVID W. LANGLEY**
8551 W. Sunrise Blvd.
Suite 303
Fort Lauderdale, FL 33322
Telephone No. 954-356-
Fax No. 954-356-0451
Email: dave@flalawyer.com

By: /s/ David W. Langley
    DAVID W. LANGLEY
    Florida Bar No. 348279

**MARSHALL SOCARRAS GRANT, P.L.**
197 South Federal Highway
Suite 300
Boca Raton, Florida  33432
Telephone No. 561.361.1000
Facsimile No. 561.672.7581
Email:  jgrant@msglaw.com

By:  /s/ Joe M. Grant
    JOE M. GRANT
    Florida Bar No. 137758
    ADAM D. MARSHALL
    Florida Bar No. 579823

# EXHIBIT 10

## The "Cristol Judgment"



**ORDERED in the Southern District of Florida on October 31, 2017.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

In re:

LIZA HAZAN,                                            CASE NO. 16-10389-BKC-AJC
a/k/a ELIZABETH HAZAN

    Debtor.                                   CHAPTER 11

_____/

LIZA HAZAN a/k/a ELIZABETH HAZAN
and SELECTIVE ADVISORS GROUP, LLC,        ADV. NO. 16-1439-BKC-AJC-A

    Plaintiffs,

vs.

NLG, LLC

    Defendant.

_____/

### FINAL JUDGMENT ON COUNTS I, II AND III OF PLAINTIFFS' THIRD AMENDED COMPLAINT DETERMINING VALIDITY, PRIORITY AND EXTENT OF LIENS AND SETTING TRIAL ON COUNTS IV THROUGH IX

**THIS CAUSE** came before the Court for trial on July 13, 2017 at 10:00 a.m., upon

Plaintiffs, Selective Advisors Group, LLC ("Selective") and Liza Hazan a/k/a Elizabeth Hazan's Third Amended Complaint and Defendant, NLG, LLC's Counterclaim. Selective commenced this Adversary Proceeding against NLG, LLC ("NLG") on August 21, 2016, seeking a determination of the nature and extent of its claimed lien, if any. Debtor joined the adversary proceeding against NLG on October 21, 2016. The Third Amended Complaint was deemed the operative Complaint by Order entered January 23, 2017, and NLG filed an Amended Answer and Counterclaim on May 17, 2017. In its Counterclaim, NLG also seeks a determination of the nature and extent of its claimed lien and that its late filed claim be allowed as a timely filed claim. Plaintiffs seek a determination that NLG has no remaining claim against this Debtor and no standing to participate in this case.

The Court having reviewed the file, the documentary evidence and exhibits, having heard the testimony of witnesses and argument of counsel, finds and concludes as follows.

## A. **Background**

Ms. Hazan is the owner of her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property"). She purchased the Property on March 7, 2007 from NLG. Chris Kosachuk is the manager and representative of NLG. For nearly a decade, Kosachuk and NLG have litigated with Debtor in multiple courts and in several jurisdictions. The various courts have entered final orders setting forth the rights and obligations of Ms. Hazan, NLG, and Selective.

All interested parties to the various controversies are now before this Court and subject to its jurisdiction. This Court is not an appellate court for any of the other courts; thus, full faith and credit must be given to all of the final judgments and orders entered in the other courts as those judgments have become final and not subject to appeal.

There have been claims or assertions that some of these other court decisions are erroneous.

However, when the decisions or judgments of those courts became final and not subject to further appeal, those decisions or judgments became the law of the respective case and not subject to further review by this Court. While arguments have been made to accept one or more of the prior judgments and ignore others, those arguments are not persuasive and this Court will attempt to determine the rights of the parties by giving full faith and credit to all of the final orders and judgments.

## State Court Proceedings

NLG's claim against Debtor arises from a promissory note (the "Note") (Exhibit 1) and mortgage (the "Mortgage") (Exhibit 2) on the Property, recorded in April 2007 in the original amount of $1,275,000.00.  In June 2007, NLG sued Debtor for an alleged breach of the Note, in Miami-Dade Circuit Court, Case No. 07-19532 CA 11 (Exhibit 3). On April 28, 2008, Circuit Judge Robert N. Scola Jr. entered a Default Final Judgment on the Note (the "Scola Judgment") against Ms. Hazan in the amount of $1,618,071.29 with 11% interest per annum (Exhibit 4).  NLG moved to domesticate the Scola Judgment in New York and litigation followed in the New York Supreme Court.

In December 2011, NLG filed a second lawsuit, Case No. 11-42770 CA (01), in Miami–Dade Circuit Court seeking to foreclose on the Mortgage (Exhibit 5). On February 8, 2013, the trial court judge, Judge Spencer Eig, ruled that NLG had made an election of remedies by first suing on the alleged breach of the Note, and obtaining a judgment thereon.  As such, Judge Eig precluded NLG from foreclosing on the Mortgage (Exhibit 6).  NLG appealed that decision to the Third District Court of Appeal.

On April 30, 2014, while the Eig Order was on appeal to the Third District Court of Appeal, Plaintiff Selective acquired a 2012 New York judgment against NLG [and in favor of 9197-5904 Quebec, Inc.] and recorded the foreign judgment in Miami-Dade County, Florida in Case No.14-10475 CA (10) assigned to Circuit Court Judge Peter Lopez (the "Quebec Judgment").  NLG filed a

Motion to Quash the recording of the New York judgment against it in Florida. However, after NLG

failed to post a bond as ordered, Judge Lopez denied NLG's motion to quash on June 16, 2014, finding

that Plaintiff Selective has the right to enforce and collect on their foreign judgment, the

$5,000,225.00 Quebec Judgment.

Thereafter, on July 2, 2014, Selective, as owner of the then-domesticated foreign judgment,

the Quebec Judgment, brought proceedings supplementary in Case No.14-10475 CA (10) specifically

to seize and attach NLG's judgment against Hazan (the Scola Judgment) for the purpose of partially

satisfying the Quebec Judgment. Circuit Judge Lopez heard the Proceedings Supplementary Motion

on August 12, 2014 and August 15, 2014, and entered an Order on August 20, 2014, judicially

assigning to Selective the Scola Judgment against Debtor (the "Lopez Assignment Order"). The

Lopez Assignment Order states in pertinent part:

> 1.      The Court orders that the Hazan Final Judgment held by NLG, LLC, against
> Elizabeth Hazan, ("Hazan Final Judgment") and all of NLG, LLC's rights, claims and
> benefits held against Elizabeth Hazan are hereby judicially assigned to the Plaintiff-
> Assignee, SELECTIVE ADVISORS GROUP, LLC, a Delaware Limited Liability
> Company.
>
> 2.      Plaintiff-Assignee, SELECTIVE ADVISORS GROUP, LLC shall stand in
> the shoes of NLG, LLC with respect to all claims, rights, and benefits held by NLG,
> LLC so as to entitle it to recover all proceeds attributable to said judgment against
> additional Defendant, Elizabeth Hazan, with NLG, LLC receiving credit for all sums
> so received.
>
> 3.      Plaintiff, SELECTIVE ADVISORS GROUP, LLC shall give a credit to
> Defendant NLG, LLC in the sum of $2,746,953.34 which amount includes principal
> and interest through August 31, 2014 at the 11% judgment amount **without prejudice
> to Defendant establishing at further hearing why the credited amount should be
> greater**.

Exhibit 8 (emphasis added).

At trial, NLG argued that the Scola Judgment was the subject of an appeal at the time of the

assignment, and therefore could not have been judicially assigned by Judge Lopez. However, Judge

Lopez actually addressed and dismissed that argument when he denied NLG's motion to reconsider

the Order of assignment of the Scola Judgment to Selective:

> Okay, so I assigned your interest in it to them (Selective), which had nothing to do
> with what's going on up on appeal. . . .

> That judgment that I assigned to them (Selective) or that interest in that judgment was
> up on appeal. I didn't affect the validity of what's up on appeal. I just said, if you win
> or lose, whatever happens, now, these people own it instead of you. The Third came
> back and said, too bad, you get to foreclose, they now own that judgment or note if
> that's what merged into it, they (Selective) get to go and foreclose.

Exhibit 22, Tr page 24 lines 3-5; Tr page 26 Lines 3-12.  Judge Lopez's Orders are final.

### Satisfaction and Payment of the Scola Judgment

On August 20 and 21, 2014, Selective filed a satisfaction of the Scola Judgment and the

Mortgage (Exhibit 9).  Selective gave credit to NLG towards the Quebec Judgment. According to the

Electronic Judgment Lien Amendment Statement filed on September 5, 2014 with the Florida

Secretary of State (Exhibit 14), it appears NLG was given credit in the amount of the Scola Judgment,

or $1,618,071.29, without credit for interest thereon.  The Lopez Assignment Order specifically

determined that $2,746,953.34 was the correct sum to be credited to NLG for the Scola Judgment, as

that amount includes interest from April 28, 2008 through August 31, 2014. **The Lopez Assignment

Order also left open the possibility of an increase in that amount, should same be proven at a

further hearing**.

The Lopez Assignment Order was never vacated or set aside, and the decision remains the

law of the case.

In the New York lawsuit by NLG against the Debtor, Selective proceeded to intervene.  Judge

Barbara Jaffe of the New York Supreme Court entered a Decision and Order on October 30, 2014

recognizing Selective's assignment of the Scola Judgment pursuant to the Lopez Assignment Order.

In that case, the court ordered the caption of the New York case be changed to reflect the substitution

Page 153 of 195

of Selective Advisors Group, LLC as the proper party, in place of NLG, LLC (Exhibit 18). The court also directed the Clerk to accept for filing the Order of assignment "judicially assigning the underlying Florida judgment from plaintiff to Selective", and strike all NLG's judgments of record against Ms. Hazan. On November 13, 2014, Judge Jaffe dismissed NLG's lawsuit against Elizabeth Hazan, ruling as follows:

> Given the satisfaction of Judgment in the underlying action under index #101288/2013, as reflected in my Decision and Order dated October 30, 2014, defendant's motion to dismiss the proceeding is granted and the proceeding is dismissed. The clerk is directed to enter judgment accordingly.

Exhibit 19.

### The Third District Court of Appeal Opinion and the Gordo Foreclosure Judgment

On September 3, 2014, the Third District Court of Appeal reversed Judge Eig on the issue of election of remedies and held that foreclosure could proceed on the Mortgage (Exhibit 12). Circuit Judge Monica Gordo, by that time having replaced Judge Eig in the division, then entered a foreclosure judgment in favor of NLG, despite the judicial assignment of NLG's interests in the Note and Mortgage to Selective (the "Gordo Foreclosure Judgment"). Notwithstanding the various court rulings recognizing the judicial assignment of the Scola Judgment to Selective, Judge Gordo entered a Final Judgment of Foreclosure in favor of NLG on December 4, 2015 (Exhibit 21). The Gordo Foreclosure Judgment determined NLG, LLC was entitled to the grand total sum of $4,876,654.29 and set a sale for January 12, 2016.

However, on January 11, 2016, the Debtor filed for Chapter 11 bankruptcy protection and the sale was stayed.

### B. Legal Analysis

Plaintiffs contend that Judge Lopez judicially assigned to Selective the Scola Judgment, together with all the rights and claims thereunder, which includes the right to enforce the Mortgage,

Page 154 of 195

6

leaving NLG with no enforceable mortgage, lien, or claim in this bankruptcy case.  NLG takes the position that, notwithstanding the judicial assignment of the Scola Judgment on the Note, NLG retained the right to foreclose on the Mortgage. NLG asks the Court to limit its review to only one out of the many rulings entered in the ten-year history of litigation between the parties.  It asks the Court to look only to the Gordo Foreclosure Judgment, contending that Judge Gordo resolved all issues in NLG's favor.

After reviewing the history of the proceedings between the parties, it is evident the Gordo Foreclosure Judgment does not resolve all issues in NLG's favor. The Scola Judgment, the Lopez Assignment Order, and the Gordo Foreclosure Judgment all control this Court's decision going forward.  The Scola Judgment established Debtor's liability to NLG on the Note.  The Scola Judgment, and consequently the Mortgage, were assigned to Selective by the Lopez Assignment Order, and were thereafter satisfied.  Finally, by the Gordo Foreclosure Judgment, NLG, LLC established its entitlement to a greater credit for the judicial assignment of the Note and Mortgage. Moreover, any interest NLG may have had in the Mortgage by virtue of the Gordo Foreclosure Judgment is/was extinguished upon redemption by the Debtor and satisfaction.

The Scola Judgment awarded NLG, LLC $1,618,071.29 against the Debtor for Debtor's breach of the Note.

In 2014, after entry of the Scola Judgment, Selective acquired a $5,000,225 judgment against NLG, LLC, the Quebec Judgment. (Although NLG argued that the Quebec Judgment was erroneous or invalid, it is a final judgment not subject to appeal.)  Selective domesticated the Quebec Judgment in state court, before Judge Lopez, and the order domesticating the judgment has become final and non-appealable.  Thereafter, the Lopez Assignment Order was entered, judicially assigning the Scola Judgment to Selective [in partial satisfaction of the Quebec

Judgment] and determining the value of the Scola Judgment to be $2,746,953.34, inclusive of interest. The Lopez Assignment Order judicially assigns the Scola Judgment to Selective, together with all the rights and claims thereunder.

Because ownership of the Mortgage follows the Note, in the absence of a contrary intention, Selective, who owns and holds the Note, therefore has standing to foreclose the Mortgage.

> It has frequently been held that a mortgage is but an incident to the debt, the payments of which it secures, and its ownership follows the assignment of the debt. If the note or other debt secured by the mortgage be transferred without any formal assignment of the mortgage, or even a delivery of it, the mortgage in equity passes as an incident to the debt, unless there be some plain and clear agreement to the contrary, if that be the intention of the parties.

*Taylor v. Bayview Loan Servicing, LLC*, 74 So.3d 1115, 1117-18 (Fla. 2d DCA 2011). Under Florida law, "[a] crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to foreclose" [the subject note and subject mortgage when the complaint is filed]. *McLean v. JPMorgan Chase Bank Nat'l Ass'n*, 79 So.3d 170, 173 (Fla. 4th DCA 2012). "Standing may be established by either an assignment or an equitable transfer of the mortgage prior to the filing of the complaint." *Id.* NLG has not demonstrated that it owns and holds the Note and Mortgage in question. *Verizzo v. Bank of N.Y.*, 28 So.3d 976, 978 (Fla. 2d DCA 2010). Here, NLG's interest in the Note, as evidenced by the Scola Judgment, was assigned by Judge Lopez to Selective. NLG no longer holds the right to enforce the Note or the Scola Judgment entered on the Note. See, Trial Transcript Page 27 lines 3-11. There being no evidence presented to support the position that the parties did not intend for the Mortgage to follow the Note, the Mortgage did indeed follow the assignment of the Note in this case. The Note having been judicially assigned to Selective, Selective has standing to foreclose the Mortgage and, upon assignment, NLG had no further right to foreclose the Mortgage. When Judge Lopez assigned the Scola Judgment to

Page 156 of 195

Selective, Selective stepped into the shoes of NLG, acquiring standing to foreclose on the Note and Mortgage.

The public records for Miami-Dade County, Florida reflect that the Scola Judgment and the Mortgage were both satisfied in August 2014. NLG was given credit by Selective for the debt remaining under the Scola Judgment and Mortgage, in partial satisfaction of the domesticated Quebec Judgment. It appears that credit may not have been finally determined, as discussed further herein.

Notwithstanding the judicial assignment to Selective and subsequent satisfactions, in November 2014, the Third District Court of Appeal, presumably unaware of the assignment and satisfactions, entered an opinion reversing the Eig Order and permitting foreclosure of the Mortgage. Following the mandate, Judge Gordo entered the Gordo Foreclosure Judgment in December 2015. The Gordo Foreclosure Judgment determined NLG is entitled to $4,876,654.29 under the Note and Mortgage. The Court is advised Selective tried to intervene in the case but Judge Gordo did not allow intervention. This Court was not informed as to why Selective did not otherwise intervene in the appeal of the Eig Order and advise the Third District Court of Appeal that Selective was assigned the Note and Mortgage and that the Note and Mortgage were satisfied months before the Third District Court Appeal issued its opinion reversing the Eig Order.

Thus, it initially appears there may be a conflict between the Lopez Assignment Order, assigning ownership of the Note and Mortgage on the Property to Selective, and the Gordo Foreclosure Judgment, granting foreclosure of the Property in favor of NLG as Plaintiff instead of in favor of Selective. However, this conflict has been overcome by events.

Giving full faith and credit to the Lopez Assignment Order, NLG's rights in the Scola Judgment were assigned to Selective, after Judge Lopez concluded that the assignment of the Scola

Judgment to Selective had no relevance to the issues on appeal. (Exhibit 22, Tr. 26:3-11). The Lopez Assignment Order establishes that NLG, LLC is entitled to $2,746,953.34 for the assignment, "which amount includes principal and interest [on the Note] through August 31, 2014 at the 11% judgment amount *without prejudice to [NLG] establishing at further hearing why the credited amount should be greater*." (Emphasis added.)  Giving full faith and credit to the Gordo Foreclosure Judgment, NLG established its entitlement to a greater credit than that in the Lopez Assignment Order, in the grand total sum of $4,876,654.29. The Gordo Foreclosure Judgment also granted NLG the right to foreclose, but allowed the Debtor to redeem the Property up until the time of the sale. Thus, notwithstanding the right to foreclose, no sale took place, and the Debtor's right to redeem remains alive and well.

NLG argued at trial that Selective is collaterally estopped from asserting its interest in the Mortgage. "However, in collateral estoppel the 'precise fact' or 'every point and question' on the issue must have been decided". *Chandler v. Chandler,* 226 So.2d 697 (Fla. 4th DCA 1969) citing *Gordon v. Gordon*, 59 So.2d at 45 (Fla.1952). Here, Selective sought to intervene in the Gordo foreclosure lawsuit to raise its unique issues of law and fact relative to the assignment of the Mortgage rights and the right to intervene was denied to Selective. "[I]f there is any doubt as to whether a litigant has had his day in court such doubt must be resolved in favor of the full consideration of the substantive issues of the litigation". *Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324 (11th Cir. 2010). The evidence and testimony presented at trial demonstrate that Selective was not a party to the Gordo case and therefore is not barred by res judicata or collateral estoppel from asserting its rights under the Note and Mortgage.

However, even assuming that the Gordo Foreclosure Judgment authorized NLG, *and not Selective*, to foreclose the Mortgage, the foreclosure sale never took place because Debtor filed

Page 158 of 195

this bankruptcy case, staying the sale pursuant to 11 U.S.C. §362. The Debtor redeemed the

Property prior to a foreclosure sale being conducted and certificate of sale being issued, thereby

satisfying the Gordo Foreclosure Judgment. In paragraph 4 of the Gordo Foreclosure Judgment,

the state court judge set a foreclosure sale date, subject to paragraph 6 therein. Paragraph 6 of the

Gordo Foreclosure Judgment states:

> **Right of Redemption.** On filing of the Certificate of Sale, defendant's right of
> redemption as proscribed by Florida Statute, Section 45.0315 shall be terminated.

Section 45.0135, Fla. Stats., provides:

> At any time before the later of the filing of a certificate of sale by the clerk of the
> court or the time specified in the judgment, order, or decree of foreclosure, the
> mortgagor or the holder of any subordinate interest may cure the mortgagor's
> indebtedness and prevent a foreclosure sale by paying the amount of moneys
> specified in the judgment, order, or decree of foreclosure, or if no judgment, order,
> or decree of foreclosure has been rendered, by tendering the performance due under
> the security agreement, including any amounts due because of the exercise of a
> right to accelerate, plus the reasonable expenses of proceeding to foreclosure
> incurred to the time of tender, including reasonable attorney's fees of the creditor.
> Otherwise, there is no right of redemption.

Until the certificate of sale issued, the Debtor retained her right of redemption, regardless of the

identity of the mortgagee. Consistent with her rights under the Gordo Foreclosure Judgment and as

provided by statute, the Debtor in fact redeemed the Property prior to a foreclosure sale, by satisfying

the Note and Mortgage, and by Selective providing NLG credit for payment of the Note and Mortgage

to partially satisfy NLG's debt to Selective by virtue of the Quebec Judgment.

The amount of the credit provided to NLG should be the greater amount established by the

Gordo Foreclosure Judgment. Although the Scola Judgment determined the debt on the Note to be

$1,618,071.29, the Lopez Assignment Order increased the amount owed to NLG by the Debtor to

$2,746,953.34. The Gordo Foreclosure Judgment ultimately established that NLG was entitled to

$4,876,654.29 for the Note and Mortgage. While the $4,876,654.29 amount may be disputed, the

Court must give full faith and credit to the Gordo Foreclosure Judgment and will therefore view the amount determined in that judgment to be the greater amount NLG established it was owed on account of the Note and Mortgage, *as the Lopez Assignment Order allowed*.

It appears from the Electronic Judgment Lien Amendment Statement (Exhibit 14) that NLG was given credit only for the amount indicated in the Scola Judgment, or $1,618,071.29. It was not credited with the amount indicated in the Lopez Assignment Order of $2,746,953.34 (which included interest on the Scola Judgment), nor was it credited with the amount indicated in the Gordo Foreclosure Judgment, $4,876,654.29. However, at the time of trial, the parties' rights were already determined by all those orders. Before any credits, Selective was owed $5,000,225.00 from NLG on account of the Quebec Judgment, and NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage pursuant to the Gordo Final Judgment. Honoring the Gordo Foreclosure Judgment, NLG must be credited for the full amount of the judgment, $4,876,654.29, whether that amount is lesser or not, for the assignment of the Note and Mortgage and satisfactions, leaving the Mortgage redeemed and Selective with a judgment against NLG in the remaining amount of $123,570.71. Whether the various satisfactions and other documents filed by Selective waive Selective's right to collect any further balance is an issue between Selective and NLG.

## Conclusion

The Scola Judgment obtained by NLG against the Debtor, and all rights, claims and benefits held by NLG against Debtor related to said judgment, were judicially assigned to Selective pursuant to the Lopez Assignment Order, and the right to foreclose the Mortgage securing the debt traveled to the assignee Selective. Although NLG's right to foreclose against Hazan, as established by the Third District Court of Appeal, had been assigned to Selective, the Gordo Foreclosure Judgment granted NLG the right to foreclose. Assuming the validity of the Gordo Foreclosure

Page 160 of 195

Judgment, the Debtor exercised her right to redeem the Property by satisfying said judgment prior to the foreclosure sale. Satisfactions of the Note and Mortgage are recorded in the official records and several courts have recognized that Debtor's debt to NLG has been paid, including the New York State Supreme Court, wherein Judge Jaffe found that NLG's judgment on the Note, the Scola Judgment, was judicially assigned to Selective and was thereafter satisfied. Upon satisfaction, NLG was credited by Selective for the Scola Judgment and Mortgage to partially satisfy NLG's debt to Selective under the domesticated Quebec Judgment.

The Court believes that credit should, however, be adjusted to reflect the amounts determined to be due and owing by the Gordo Foreclosure Judgment. NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage, pursuant to the Gordo Final Judgment. Giving full faith and credit to the Gordo Foreclosure Judgment and viewing the amount determined in the judgment to be the greater amount NLG established it was owed for the Note and Mortgage pursuant to the Lopez Assignment Order, Selective should give credit to NLG for $4,876,654.29, which credit will leave the Mortgage redeemed.

This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the Property fully redeemed prior to foreclosure sale, as provided in the Gordo Foreclosure Judgment. NLG's Proof of Claim #17, having been filed after the bar date, it is disallowed and the Court finds that NLG has no standing in this case based upon the Note, Mortgage, claim or lien emanating therefrom. Accordingly, it is

ORDERED and ADJUDGED that Counts I, II and III of Plaintiffs' Third Amended Complaint and NLG's Amended Counterclaim are **GRANTED IN PART** and **DENIED IN PART**

as follows:

1.     NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami, Florida 33109 with the following legal description:

> LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157, Page 64, of the Public Records of Miami-Dade County, Florida

have been satisfied and paid, and are deemed **SATISFIED OF RECORD**, and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the Property is forever quieted as to all claims of NLG, LLC.

2.     Selective shall give credit to NLG, LLC in the amount of $4,876,654.29 toward NLG's outstanding debt due to Selective pursuant to the Quebec Judgment.

3.     NLG's Proof of Claim #17 is disallowed and NLG, LLC has no claim against the Debtor, Liza Hazan a/k/a Elizabeth Hazan, under the Note, Mortgage or any court order.

4.     Counts IV, V, VI, VII, VIII, and IX of Plaintiff's Third Amended Complaint are set for trial by separate order.

# # #

Copy to:
DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone: 954-356-0450
Facsimile: 954-356-0451

Email: dave@flalawyer.com
Florida Bar No. 348279

Attorney Langley is directed to serve a copy of this Final Judgment on all interested parties and to file a Certificate of Service with the Court.

# EXHIBIT 11

Selective Advisors Chapter 11 Case Summary

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:                                                    Chapter 11

SELECTIVE ADVISOR GROUP LLC                    CASE NO.: 19-14602-AJC

Debtor.

_____/

## CHAPTER 11 CASE MANAGEMENT SUMMARY

In compliance with Local Rule 2081-1(B), the Debtor, Selective Advisor Group LLC, (the "Debtor"), files this Chapter 11 Case Management Summary and states:

The following data represents approximations for background information only and the information may represent the Debtors' best estimate in response to some of the ensuing questions.

1. Date of Order for Relief under chapter 11 (filing date of petition if voluntary chapter 11 petition): April 9, 2019 (the "Petition Date").

2. Names, case numbers and dates of filing of related debtors:
a. DistrictEastern District of New York, 5/18/15, Case number: 8-15-72153-reg
b. Liza Hazan, Related Party, Southern District of Florida, 1/11/16, Case No. 16-10389-AJC
c. Liza Hazan: Selective Advisors Group vs NLG LLC, Adversary Case, Southern District of Florida, 8/21/16, Case number, 16-01439-AJC

3. Description of debtors' business: The Debtor acquires and collect on judgments.

4. Locations of debtors' operations and whether the business premises are leased or owned: The Debtor is a business. The Debtor is located at 6913 Valencia Drive, Miami Beach, Florida 33109.

5. Reasons for filing chapter 11: The Debtor filed for bankruptcy to preserve financial resources, to consolidate litigation pending in multiple courts into this bankruptcy proceeding, and to negotiate and resolve creditor disputes within the confines of Chapter 11.

6. List of officers and directors, if applicable, and their salaries and benefits at the time of filing and during the 1 year prior to filing:Sean Meehan

7. Debtors' fiscal or calendar year to date gross income and the Debtors' gross income for the calendar or fiscal year prior to the filing of this petition:
2019 YTD Income: $0.00
2018 Income: $0.00

8. Amounts owed to various creditors:
a. Obligations owed to priority creditors including priority tax obligations: The Debtors are aware of potential obligations to the following priority creditors: N/A

b. With respect to creditors holding secured claims, the name of and amounts owed to such creditors and a description and estimated value of all collateral of the debtor securing their claims: N/A

c. Amount of unsecured claims: the approximate amount of the Debtor's unsecured claims is between $110,000.00 to $130,000.
- Marshall Grant $78,796.99
- Marzec Law Firm unknown
- Daniel A. Bushell unknown
- Behar Gutt & G unknown
- The Law Offices of J. Henry Nierman $ 20,000
- Law offices Of Ray Garcia $4,000
- Florida Bankruptcy Group, LLC unknown

9. General description and approximate value of the Debtors' assets:

On or about April, 2014, Selective acquired a New York judgment against NLG, LLC and domesticated it in Florida, Case No. 14-10475-CA(10).On August 20, 2014, Debtor executed against NLG and became the assignee of NLG, LLC's judgment against Elizabeth Hazan and the owner of the mortgage owned by NLG against Elizabeth Hazan's property located at 6913 Valencia Drive. The State Court inCase No. 14-10475-CA(10) (Judge Peter Lopez) in proceedings supplementary, judicially assigned the judgment obtained by NLG in case 2007-29532-CA-02 against Elizabeth Hazan and the mortgage that was subject to a foreclosure action in case 2011-42770-CA-02 to Selective. Selective became NLG, LLC's assignee all the rights, claims and benefits held by NLG and stood in the shoes of NLG with respect to all claims, rights and benefits held by NLG.
Judge Cristol found after a trial held in July 2017 that the Lopez Order of Assignment was Final and was never set aside,See Case No. 16-01439-AJC. Judge Cristol entered a Final Judgment On November 1, 2017,in favor of Debtor Selective and Elizabeth Hazan, D.E. No. 238. ("The Final Judgment").Judge Cristol concluded that the balance owed by NLG to Debtor Selective as of November 1, 2017 was $123,570.71.

10. List of all insurance policies, the property covered under the policy, the name of the insurer, the policy number, amount of coverage, whether the premium is current, the date the next premium is due and date the policy expires: N/A

11. Number of employees and amounts of wages owed as of petition date: N/A.

12. Status of debtors' payroll and sales tax obligations, if applicable. This does not eliminate the obligation of Chapter 11 debtors (other than individuals not engaged in business) to provide the more detailed payroll tax information required by Local Rule 2081-1(A): N/A.

13. Anticipated emergency relief to be requested within 14 days from the petition date: The Debtor does not anticipate any need for emergency relief at this time. The Debtor has pending a Motion for Order to Show Cause, ECF 8, set for hearing on May 8, 2019.

I, Sean Meehan, Manager for Debtor, declare under penalty of perjury that the foregoing information is true and correct to the best of my knowledge, information and belief.

/s/Sean Meehan_____
Manager for Selective Advisor Group LLC

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); andthat a true copy of the above document was filed electronically and served via CM/ECF and by mail to all parties of interest as specified on attached serviced list on this 6th day of May, 2019.

DAVID W. LANGLEY
Attorney for Debtors-in-possession
8551 W. Sunrise Blvd., Ste 303
Plantation, Florida 33322
Telephone:     954-356-0450
Facsimile:     954-356-0451
E-mail: dave@flalawyer.com
By:     /s/ David W. Langley_____
        David W. Langley, Esq.
        Florida Bar Number 348279