**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**



In re:                                    Case No. 21-11269-JKS

NLG, LLC,
a Delaware LLC                            Chapter 7 Pending Conversion to Chapter 11
Debtor

_____/

CHRIS KOSACHUK

     Plaintiff

v.                                        Adversary Case No. 22-ap-50421-JKS

9197-5904 QUEBEC, INC.

&

SELECTIVE ADVISORS GROUP, LLC

     Defendants

_____/

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MEMORANDUM OF LAW [DOC. 9] IN SUPPORT OF MOTION TO DISMISS COMPLAINT [DOC. 8]

Chris Kosachuk
*Pro Se* Plaintiff
854 Pheasant Run Rd.
West Chester, PA 19382-8144
chriskosachuk@gmail.com
Tel. (305) 490-5700

January 6, 2023

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………………3

INTRODUCTION………………………………………………………………………………6

STATEMENT OF FACTS……………………………………………………………………8

LEGAL ARGUMENTS………………………………………………………………………11

      Rooker-Feldman Has No Application In This Case ...................................................11

      Abstention Is Not Warranted .......................................................................................13

      Kosachuk has Standing.................................................................................................14

      This Court Has Subject Matter Jurisdiction.................................................................15

      The Complaint Is Not Time-Barred.............................................................................16

      No Court Has Ruled On The Merits Of This Declaratory Seeking Cancellation of the Indebtedness Caused by the Judgment by Confession .................................................19

CONCLUSION.......................................................................................................................20

CERTIFICATE OF SERVICE ..............................................................................................21

## TABLE OF AUTHORITIES

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)..................11

*Baker by Thomas v. GMC*, 522 U.S. 222, 246, 118 S. Ct. 657, 139 L. Ed. 2d 580 (1998)..........12

*Burkham v. Van Saun,* 14 Abb. Pr. 163, 1873 N.Y. Misc. LEXIS 92 (N.Y. App. 1st Dist. 1873).18

*Chambers v. Armontrout,* 16 F.3d 257, 260 (8th Cir. 1994)…………………………………………..17

*CIBC Mellon Tr. Co. v. Samuel Montagu & Co. Ltd.*, 2006 NY Slip Op 445…………………..20

*Cole-Hatchard v. Nicholson* [73 AD3d 834, 901 N.Y.S.2d 660 (2d Dept. 2010)……………….17

*Colorado River Water Conser. Dist. v. United States*, 424 U.S. 800, 813, 96 S. Ct. 1236, 1244 (1976)…………………………………………………………………………………………………….13

*DaimlerChrysler Servs. N. Am. v. Granger*, 2004 NY Slip Op 24417…………………………..14

*Davis v. Scherer*, 468 U.S. 183, 82 L. Ed. 2d 139, 104 S. Ct. 3012 (1984)……………………..13

*D. H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185, 92 S. Ct. 775 (1972)……………………17

*Ex Parte Seidel,* 39 S.W.3d 221, 225 (Tex. Crim. App. 2001)…………………………………..15

*Fiore v. Oakwood Plaza Shopping Center, Inc.*, 78 NY2d 572, 585 N.E.2d 364, 578 N.Y.S.2d 115 (1991)…………………………………………………………………………………………………….17

*Franklin v. Muckley*, 189 Misc. 155, 70 N.Y.S.2d 815 (1947)…………………………………...18

*Gaynor & Bass v. Arcadipane* 268 A.D.2d 296, 700 N.Y.S.2d 818)……………………………18

*Geer, Du Bois & Co. v. O.M. Scott & Sons Co., Inc.*, 25 A.D.2d 423, 266 N.Y.S.2d 580………18

*GTR Source, LLC v. Futurenet Grp., Inc.*, 2018 NY Slip Op 28366, ¶ 1, 62 Misc. 3d 794, 810, 89 N.Y.S.3d 528, 530 (Sup. Ct.)………………………………………………………………………….16

*Irons v. Roberts*, 206 A.D.2d 683, 614 N.Y.S.2d 792 [3rd Dept 1994]…………………………....17

*Johnson* v. *De Grandy,* 512 U.S. 997, 1005-1006, 114 S. Ct. 2647, 129 L. Ed. 2d 775 (1994)...12

*Lance v. Dennis*, 546 U.S. 459, 126 S. Ct. 1198 (2006)………………………………………...11-12

*Lin Shi v. Alexandratos*, 2016 NY Slip Op 32387(U)…………………………………………...14

*Massey Knakal Realty of Brooklyn LLC v. W.J.R. Assoc.*, 41 Misc. 3d 1239[A], 983 N.Y.S.2d 204, 2013 NY Slip Op 52111[U] [Sup. Ct. Kings Co. 2013]…………………………………………16

*Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir. 2000)..................18

*Morris N. Am., Inc. v. King*, 430 So. 2d 592, 592-93 (Fla. 4th DCA 1983)..........................14

*Midland Funding v. Sidibe*, 2018 NYLJ LEXIS 2472, \*6 (Civil Ct. NY, 2018)...................17

*Pennoyer v. Neff*, 95 U. S. 714 (1878)……………………………………………………………..15

*Phifer v. City of N.Y.*, 289 F.3d 49, 55 (2d Cir. 2002)……………………………………………..10

*Reliance Life Ins. Co. v. Burgess*, 112 F.2d 234, 238 (8th Cir. 1940)……………………………..11

*Rubashkin v. Rubashkin*, 98 AD3d 1018, 950 N.Y.S.2d 586 (2d Dept. 2012)......................16

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)....................13

*Sec. Ins. Co. v. Commercial Credit Equip. Corp.*, 471 So. 2d 1302 (Fla. 3d DCA 1985)………14

*St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000)……………………………………………18

*Sunnen v. United States HHS*, 2013 U.S. Dist. LEXIS 44951……………………………………..18

*Terezakis v. Goldstein*, 168 Misc.2d 298, 640 N.Y.S.2d 1005 [S. Ct. N.Y. County]…………...17

*Tipton v. Thaler*, 354 F. App'x 138, 142 (5th Cir. 2009)………………………………………...15

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270, 130 S. Ct. 1367, 1377 (2010)...16

*Williams v. Mittlemann*, 259 A.D. 697, 20 N.Y.S.2d 690 [2nd Dept. 1940]……………………17

*Yellowstone Cap., LLC v. Sun Knowledge Inc.*, 2017 NY Slip Op 32870(U) (Sup. Ct. 2017)….17

## INTRODUCTION

9197-5904 Quebec, Inc. ("Quebec") and Selective Advisors Group, LLC's ("Selective"), initial tactic followed the same strategy previously condemned by the United States District Court in the prosecution of its Removal Action in Case No. 19-cv-00029-DLC. There, Judge Cote stated that Selective's counsel had "engaged in substantial litigation misconduct" in that it "filed reams of paper, over 800 pages, that were disorganized, quite a burden to this Court and a burden, no doubt, to the adversary." [*See 9197-5904 Quebec, Inc. v. NLG, LLC* Case No. 19-cv-00029-DLC Doc. 48 p. 18-19]. Defendants attempt the same litigation misconduct here but don't even bother to record their exhibits on the docket. Instead, in a footnote on page 2, Defendants direct the Plaintiff and this Court to exhibits filed in another adversary proceeding. Those exhibits total 597 pages and are presented in the same disorganized fashion with four arguments for dismissal with no effort to prioritize them in order of importance, or discuss them in a chronological order. Moreover, the first exhibit is Exhibit HH as opposed to Exhibit 1 or Exhibit A. Clearly this presentation of is meant to be confusing and specifically prohibited by Local Rule 7007-2(a)(iii). The Brief fails to even include a table of contents as required by Local Rule 7007-2(b)(i)(A).

Setting aside the lack of compliance with the local rules, it appears that the Defendants did not even bother to read this one count complaint (nine pages) seeking the cancellation of the indebtedness caused by the void Judgment by Confession because Defendants state that Plaintiff is seeking to overturn a state court judgment which is clearly not the relief requested. The cancellation of indebtedness is unique to bankruptcy court and has never been filed in any other court because it could not be filed unless NLG was in bankruptcy. If Defendants had an order from any court that decided this one count complaint, they could simply file it and this Court would be obligated to dismiss this complaint. The reality is that Defendants don't have such an order but want to obfuscate their misconduct by burdening this Court with irrelevant documents. This Court

needs to send a clear message that you can't rob a Delaware company with a void judgment and then try to obfuscate the crime.

Equally egregious as Defendants' robbery of NLG's only asset, is Defendants' disregard for veracity in their Memorandum. For example, in the Preliminary Statement, Selective claimed that "when it has suited [Kosachuk and NLG's] purposes, [they] have acknowledged that the Judgment [by Confession] in fact was final, and should remain in place." [Doc. 9, p. 2]. While it is true that Kosachuk and NLG have acknowledged that the Judgment by Confession was final and non-appealable, it has never suited their purposes, and they have certainly never acknowledged that is should remain in place. As the record shows, neither NLG nor Kosachuk learned of the existence of the Judgment by Confession until after a year had elapsed from its entry. It is an absurd statement that the parties would have been litigating the Judgment by Confession for nine years if either NLG or Kosachuk had ever agreed that it "should remain in place."

Significantly, Defendants never disputed the crucial facts, which render the Judgment by Confession void and subject the indebtedness to cancellation by this Court, that: (1) the president of the plaintiff corporation Quebec, Raymond Houle, executed the affidavit confessing judgment pretending to be defendant NLG; (2) NLG was never served with process, nor given notice or opportunity to be heard; (3) Houle confessed judgment for alleged torts, not a debt; (4) Attorney Darius Marzec assisted Houle in obtaining the Judgment by Confession, notarized his two affidavits and recorded them with the New York County Clerk; and (5) Marzec and Houle insured that NLG would not receive notice even after the Judgment by Confession was entered by providing NLG's address as 6499 N. Powerline Road, Ft. Lauderdale, Florida, which was the address for Arthur R. Rosenberg, the attorney representing Quebec in Florida.

The haphazard presentation of numerous arguments has left Plaintiff no choice but to rebut them following the same disorganized presentation as in Defendants' Memorandum.

Unfortunately, this ends up complicating a case that could otherwise be decided by reading the six pages that were filed to obtain the Judgment by Confession in February, 2012 and then cancelling the indebtedness caused by it. But before addressing the legal arguments, Plaintiff first has to correct the misleading and incomplete Statement of Facts presented by Defendants.

## STATEMENT OF FACTS

The first misrepresentation appears in the very first sentence of Defendant's Statement of Facts -- that the Lorret Judgment was against Kosachuk and NLG. It was not. The Lorret Judgment was only against Kosachuk. The falsity can be seen solely by reviewing the exhibit, which is the Lorret Judgment. [*See* Complaint Exh. 4]. It stated after "ORDERED, ADJUDGED AND DECREED that the plaintiff, EUGENIA LORRET, residing at , [*sic*] recover of the defendant, CHRIS KOSACHUK, residing at , [*sic*] the sum of …". *Id.* Incredibly, that was the same misrepresentation made to the Pennsylvania courts by the original plaintiff, Quebec, to obtain the charging order against NLG. [*See* Complaint Exh. 5, May 1, 2012 Order].

Houle and Attorney Marzec "*misled*" the Pennsylvania court by domesticating the Lorret Judgment against both Kosachuk and NLG, thereby obtaining a charging order against NLG. Houle falsely swore in an affidavit that the Lorret Judgment was against the defendant**s**, Kosachuk **and NLG**. But more shocking is Defendants' efforts to defraud this Court by continuing to claim that the Lorret Judgment was against both Kosachuk and NLG, then failing to mention two subsequent orders:

(1) On May 1, 2012, Pennsylvania State Court Judge Edward Griffith entered an order vacating the Lorret Judgment against NLG and vacating the charging order because Houle and Marzec "*misled*" the Court. [*See* footnote 1, in Complaint Exh. 5 p. 63]; and

(2) The Final Judgment and Order entered by the Honorable Jean K. FitzSimon, of the U.S. Bankruptcy Court for the Eastern District of Pennsylvania (the "FitzSimon Judgment" and

Complaint Exh. 8 p. 108]. In it, Judge FitzSimon vacated *nunc pro tunc* the indebtedness caused by the Lorret Judgment. The FitzSimon Judgment has been registered in the District of Delaware under case number 21-mc-520-CFC. The FitzSimon Judgment also awarded Kosachuk over $1.1 million in punitive and compensatory damages which remains wholly unsatisfied.  The bad faith involuntary petition was signed by Raymond Houle on behalf of the sole petitioning creditor Quebec and filed by Attorney Darius Marzec, the same two individuals who also created the Judgment by Confession.  Thus, any rights from the Pennsylvania Charging Order were vacated by Judge FitzSimon and the Pennsylvania State Court; critical facts purposely omitted in Defendant's Memorandum.

While arguing later in its Memorandum that this Court should abstain in favor of the state court action, Defendants also claims that NLG's motion to vacate in state court was "expressly denied on December 21, 2015, based on NLG's *non-appearance*." [*See* Doc. 9, p. 28] (emphasis in the original). Selective's own exhibit, however, attached as Exhibit Z, shows the Court's notation that there was no appearance by either side. More dishonest was the failure to disclose the reason for the non-appearance by both sides: the parties had signed a stipulation agreeing to the adjournment of the December 21, 2015 hearing. Evidently, the Court did not see the stipulation and erroneously entered the December 21, 2015 order. [Attached is the Stipulation executed by counsel for NLG and Selective as Exhibit 1].

As to the proceedings in Florida, Quebec domesticated the New York Judgment by Confession on April 21, 2014, more than two years after its entry in New York. On May 21, 2014, NLG filed a motion to quash the filing of the New York Judgment by Confession in Florida. The judge assigned to the case, Judge Lopez, denied the motion to quash unless NLG posted a bond in excess of $5 million.

While a Florida state court could not vacate the New York Judgment by Confession, it could refuse to enforce it, which is precisely what Florida Judge Monica Gordo did in her Order Granting Foreclosure of December 1, 2015. [*See* Doc. No. 1, p. 75-121]. Relying on *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559 (1980), Judge Gordo determined that "[a] judgment rendered in violation of due process is void in the rendering state and is not entitled to full faith and credit elsewhere." *Id.* p. 88. Of course, Selective would have this Court entirely ignore the foreclosure proceeding that resulted in the Final Judgment of Foreclosure entered on December 4, 2015, against Elizabeth Hazan, [Doc. 1 pp. 122-127] the wife of Selective's sole owner and manager. In particular, Selective does not want this Court to look at the December 1, 2015 Order Granting Foreclosure [Doc. 1 pp. 75-121] in which Judge Gordo denied Selective's motion to intervene in NLG's foreclosure, *inter alia*, because the New York Judgment by Confession had been previously satisfied. *Id.*, p. 80. The Florida Court further refused to recognize the Judgment by Confession, even if the judgment were still outstanding, because it was void as it was entered in violation of due process. [*See* Doc. 1, pp. 88-89].

It is true that the Bankruptcy Court in Florida subsequently allowed Selective and Hazan to re-litigate the foreclosure in an adversary proceeding in violation of the *Rooker-Feldman* doctrine.. In the bankruptcy proceeding, Judge Cristol announced that he was accepting all prior rulings as deserving of full faith and credit. NLG was not allowed litigate the void nature of the New York Judgment by Confession. Nor did NLG attempt to litigate it because that had been decided by the December 1, 2015 Order Granting Foreclosure. Judge Cristol also totally ignored the fact that the Judgment by Confession was declared fully satisfied two years earlier, on September 3, 2015. During the trial of the adversary proceeding, NLG conceded that the Judgment by Confession was final and non-appealable, but that does not make a void judgment valid nor does it preclude this Court from cancelling the Judgment by Confession indebtedness. Defendants

entire Memorandum is based upon misrepresenting the relief requested by Plaintiff in this adversary proceeding. Plaintiff is not asking this Court to vacate the Judgment by Confession yet that is precisely what Defendants argue this court can't do throughout the entire Memorandum. In an abundance of caution, Plaintiff will nonetheless address their frivolous arguments.

## LEGAL ARGUMENTS

Defendant's motion to dismiss was made "pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure." [Doc. 9, p. 7]. Under Rule 12(b)(1), a defendant can challenge this Court's subject matter jurisdiction and it is proper for this Court to "consider materials extrinsic to the complaint." *Phifer v. City of N.Y.*, 289 F.3d 49, 55 (2d Cir. 2002). As to a Rule 12(b)(6) motion, "the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but need not accept legal conclusions or unreasonable inferences." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

### Rooker-Feldman Has No Application To This Case

Mr. Kosachuk is not asking this Court to vacate the Judgment by Confession rather he is asking to cancel the indebtedness caused by the Judgment by Confession because it was used to strip NLG of its primary asset, that is the Final Judgment of Foreclosure against Ms. Hazan. There is no pending action in any court seeking this relief and never has been.

Defendants skip the cause of action completely and argue that the Judgment by Confession entered in 2012 cannot be challenged in federal court under the Declaratory Judgment Act because it is barred under the *Rooker-Feldman* doctrine when the complaint is not challenging the Judgment by Confession. Even so Defendants still miss the mark because under their rationale, no state court judgment could ever be tested in federal court using 28 USC § 2201. This statute is "designed to expedite and simplify the ascertainment of uncertain rights; and it should be liberally

construed to attain that objective." *Reliance Life Ins. Co. v. Burgess*, 112 F.2d 234, 238 (8th Cir. 1940).

There are two more reasons why the *Rooker-Feldman* rule does not apply to this declaratory judgment action. In *Lance v. Dennis*, 546 U.S. 459, 126 S. Ct. 1198 (2006), the Court explained that the *Rooker-Feldman* rule applies only to the extent that federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Id.* at 466, quoting from *Baker by Thomas v. GMC*, 522 U.S. 222, 246, 118 S. Ct. 657, 139 L. Ed. 2d 580 (1998). "Neither *Rooker* nor *Feldman* elaborated a rationale for a wide-reaching bar on the jurisdiction of lower federal courts, and our cases since *Feldman* have tended to emphasize the narrowness of the *Rooker-Feldman* rule." *Lance*, 546 U.S. at 464.

*Lance* explained that a more expansive *Rooker-Feldman* rule would tend to supplant Congress' mandate under the Full Faith and Credit Act, 28 U.S.C. § 1738. That is why this Court must give the same preclusive effect to state court judgment that it would be given in the courts of the State of New York. "Congress has directed federal courts to look principally to *state* law in deciding what effect to give state-court judgments. Incorporation of preclusion principles into *Rooker-Feldman* risks turning that limited doctrine into a uniform *federal* rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act." *Lance*, 546 U.S. at 466.

The second reason why the *Rooker-Feldman* doctrine does not apply to plaintiff Kosachuk is that he was not a party to the action when the Judgment by Confession was entered in 2012. The *Lance* case also made clear that *Rooker-Feldman* does not bar actions by nonparties, such as Kosachuk, even if those nonparties were in privity. *See Lance*, 546 U.S. at 466 ("The *Rooker-Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment simply

because, for purposes of preclusion law, they could be considered in privity with a party to the judgment."); *see also Johnson* v. *De Grandy,* 512 U.S. 997, 1005-1006, 114 S. Ct. 2647, 129 L. Ed. 2d 775 (1994).

### Abstention Is Not Warranted

While the *Rooker-Feldman* rule implicates this Court's subject matter jurisdiction, Defendants never makes clear whether its *Colorado River* abstention argument is being asserted under Rule 12(b)(1) or Rule 12(b)(6). The Memorandum simply assumes that this Court can properly consider materials extrinsic to the complaint.

As the Court stated in *Colorado River Water Conser. Dist. v. United States*, 424 U.S. 800, 813, 96 S. Ct. 1236, 1244 (1976), "[t]he doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."

Defendants again miss the mark. There is no other suit pending in any court seeking the cancellation of the indebtedness caused by the Judgment by Confession. Thus, there is no other court proceeding to which this Court should defer. Defendants attempt to mislead this court with discussions of fully briefed motions raising the same issues but no such motions exist.

Then Defendants embark on more deception by talking about a declaratory judgment action filed by NLG in the Southern District of Florida (the "NLG Complaint") but then admit that this action is now pending before this bankruptcy court under case number 22-ap-50086-JKS and this Court has yet to rule on NLG's pending Motion for Summary Judgment. A plain reading of the NLG Complaint clearly shows different causes of action. This Court should also grant the relief requested by NLG as that complaint has been pending for almost five years without Selective even filing an answer.

### Kosachuk Has Standing

Kosachuk's bona fide status as a creditor of NLG is undisputed. Mr. Kosachuk was the sole petitioning creditor in the NLG bankruptcy, which was filed over 16 months ago as such his standing is unassailable.

Defendants also argued that Kosachuk cannot be a creditor of NLG because he is the manager of the company. Of course, there is no legal basis to argue that a manager cannot also be a creditor of its corporation. There is no reason to treat Kosachuk any different from any other creditor unless it can be shown that he has committed fraud, which he has not.

Kosachuk pleaded that he was the largest third-party creditor of NLG. [Doc. No. 1 ¶ 9], which is proven by the proofs of claims filed in the NLG bankruptcy. In considering a motion to dismiss under Rule 12(b)(6), the court accepts the factual allegations set out in the complaint as true and draws all inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 82 L. Ed. 2d 139, 104 S. Ct. 3012 (1984). Thus, the lack of standing argument at this stage is totally without merit.

### This Court Has Subject Matter Jurisdiction

On September 3, 2015, Selective declared that it had received partial payment and was declaring the entire Judgment by Confession satisfied in full. [Doc. 1, pp. 20-23]. Under both New York and Florida law, and probably every state in the country, a satisfied judgment is extinguished and ceases to exist. *See Lin Shi v. Alexandratos*, 2016 NY Slip Op 32387(U), ¶ 6 (Sup. Ct.) and *Sec. Ins. Co. v. Commercial Credit Equip. Corp.*, 471 So. 2d 1302 (Fla. 3d DCA 1985) ("the satisfaction of the judgment extinguished any remaining rights in the judgment.").

However, in August 2016, Selective and its principal's wife, Elizabeth Hazan, filed in Florida a post-satisfaction adversary proceeding in Hazan's bankruptcy proceeding, based entirely on the Judgment by Confession. The complaint against NLG and Kosachuk resulted in the Cristol

Judgment where the Bankruptcy Court used the entire amount of the void Judgment by Confession indebtedness to offset against NLG's legitimate mortgage and Final Judgment of Foreclosure against Hazan. [Doc. 1, p. 160]. Selective should have ceased all collection efforts in Florida after September 3, 2015. *See Morris N. Am., Inc. v. King*, 430 So. 2d 592, 592-93 (Fla. 4th DCA 1983) ("A satisfaction signifies that the litigation is over, the dispute is settled, the account is paid."). The Bankruptcy Court, however, totally ignored the satisfaction of the Judgment by Confession and treated it as still outstanding and even found that NLG still owes Selective $123,570.71 pursuant to the void Judgment by Confession thus cancellation of the Judgment by Confession indebtedness is necessary to prevent Defendants' scheme.

The New York Courts are even stricter than Florida in vacating a satisfaction. In *DaimlerChrysler Servs. N. Am. v. Granger*, 2004 NY Slip Op 24417, ¶ 1, 5 Misc. 3d 865, 866, 784 N.Y.S.2d 357, 358 (City Ct.), the plaintiff sought to vacate a satisfaction based on an error in filing by a paralegal in the attorney's office when no consideration was given by the defendant. The court denied relief relying on precedent that had held that vacating a satisfaction "would wreak havoc on a system that third parties rely on when extending credit and therefore public policy requires the court to uphold the integrity and reliability of public records." (internal citation omitted). Here, Judge Gordo relied in part on the satisfaction of the Judgment by Confession in her Order Granting Foreclosure and her Final Judgment of Foreclosure.

Selective has made no attempt to vacate the 2015 satisfaction, knowing full well that such an effort would be futile. While relying on the satisfaction to argue that no judgment exists for this Court to vacate, it continues to claim that $123,570.71 is still due as of May 6, 2019 [*See* Doc. 1 p. 166] and has an outstanding Florida Judgment Lien Certificate with $3,387,569.20 as of May 17, 2019. [*See* Exhibit 2]. Moreover, Plaintiff is not asking this Court to vacate the Judgment by Confession.

It is also undisputed that NLG has never voluntarily paid anything for the satisfaction of the Judgment by Confession. Thus, the fact that Selective declared the judgment satisfied on September 3, 2015 does not prevent this Court from striking the indebtedness caused by the Judgment by Confession. This is particularly true where Selective continued enforcement and collection efforts after the September 3, 2015 satisfaction.

### The Complaint Is Not Time-Barred

This is probably the most frivolous argument. Kosachuk is not suing for fraud so as to trigger the statute of limitations for "an action based upon fraud." CPLR § 213(8). This is a declaratory action pursuant to 28 U.S.C. § 2201 (Declaratory Judgment Act), to strike the indebtedness caused by the Judgment by Confession under section 105 of the bankruptcy code because it is a void judgment which was used in a scheme to defraud NLG and its creditors in violation of 18 U.S.C. 157. [*See* Complaint Doc. 1 ¶ 40]. When the 11th Circuit Court of Appeals upheld the Cristol Judgment on September 1, 2021 in a published opinion [*NLG, LLC v. Horizon Hospitality Group, LLC, Selective Advisors Group, LLC and Liza Hazan*, Case No. 19-14049] the statute of limitations began to run on this cause of action thus it is not time barred. Indeed, Judge Jordan of the 11th Circuit, while sitting for Judge Martinez, thought that the appropriate course of action for the NLG Complaint, was to allow the Cristol Judgment to be decided by the District Court and 11th Circuit before addressing the Judgment by Confession. Attached hereto as Exhibit 3, is the hearing transcript before Judge Jordan. [*See Transcript* p. 14 lines 18 to 22]. This hearing transcript also explains why the NLG Complaint has been pending for five years.

For over a century, federal courts have held that judgments obtained without jurisdiction do not constitute due process of law and any judgment entered is void. *See Pennoyer v. Neff*, 95 U.S. 714, 732-33 (1878). "The judgment, if void when rendered, will always remain void." *Id.* at 728.

"A void judgment is a nullity from the beginning, and is attended by none of the consequences of a valid judgment. It is entitled to no respect whatsoever because it does not affect, impair, or create legal rights." *Tipton v. Thaler*, 354 F. App'x 138, 142 (5th Cir. 2009), quoting *Ex Parte Seidel,* 39 S.W.3d 221, 225 (Tex. Crim. App. 2001).

To be void, the judgment must be a "legal nullity." "[A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final. The list of such infirmities is exceedingly short ..." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270, 130 S. Ct. 1367, 1377 (2010). A judgment is said to be void, *inter alia,* when the court that rendered it lacked subject matter jurisdiction to grant the relief accorded by the judgment. *See* WRIGHT & MILLER, 11 FED.PRACT. & PROC., CIVIL 2D, § 2862, at 326-327 (West 1995) ("Wright & Miller"). That treatise has observed that the court has "no discretion" in such situations because a judgment is either void or it is not. *See* 11 Wright & Miller at 322; *see also Chambers v. Armontrout,* 16 F.3d 257, 260 (8th Cir. 1994) ("[R]elief from void judgments is not discretionary."). In *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S. Ct. 1367 (2010), the Court stated:

> A judgment is not void, for example, simply because it is or may have been erroneous. Similarly, a motion under Rule 60(b)(4) is not a substitute for a timely appeal. Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard.

*Id.* at 270-71, 130 S. Ct. at 1377 (citations and internal quotes omitted).

Similarly, under New York law, the case of *GTR Source, LLC v. Futurenet Grp., Inc.*, 2018 NY Slip Op 50311(U), ¶ 4, 58 Misc. 3d 1229(A) (Sup. Ct.), stated:

> *Cole-Hatchard v. Nicholson* [73 AD3d 834, 901 N.Y.S.2d 660 (2d Dept. 2010)] has subsequently been cited, correctly, for the proposition that a judgment by confession filed upon an affidavit which does not comply with CPLR §3218 is **void** as to, and subject to vacatur upon motion by, a bona fide intervening judgment creditor. *See, Rubashkin v. Rubashkin*, 98 AD3d 1018, 950 N.Y.S.2d 586 (2d Dept.

2012); *Massey Knakal Realty of Brooklyn LLC v. W.J.R. Assoc.*, 41 Misc. 3d 1239[A], 983 N.Y.S.2d 204, 2013 NY Slip Op 52111[U] [Sup. Ct. Kings Co. 2013]. Indeed, the *Massey* court correctly applied the principle upheld by *Steward v. Katcher, supra*: it ruled that while affidavits which failed to comply with CPLR §3218(a)(2) rendered judgments by confession "**void** to the extent the judgments affect the interests of third parties." *Massey Knakal Realty of Brooklyn LLC, supra*, at *6 (emphasis added).

Defendants have not disputed that the indebtedness caused by the Judgment by confession should be cancelled *nunc pro tunc*. Defendants have not disputed that the Judgment by Confession is also void because it was entered with Raymond Houle acting for both plaintiff and defendant and that the Judgment by Confession was entered without any service of process. Thus, the New York State Court lacked personal jurisdiction over NLG. The only way plaintiff Quebec professed it could circumvent this fundamental due process issue was to travel wrongfully under CPLR 3218. Judgments by Confession were held not to be per se unconstitutional because "due process rights to notice and hearing prior to a civil judgment are subject to waiver." *Fiore v. Oakwood Plaza Shopping Center, Inc.*, 78 NY2d 572, 585 N.E.2d 364, 578 N.Y.S.2d 115 (1991), *quoting from D. H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185, 92 S. Ct. 775 (1972). But here, the improper use of CPLR 3218 nullified the plaintiff's right to dispense with notice and opportunity to be heard.

The cases are legion that the failure to comply strictly with CPLR 3218 renders the judgment void. Hence, the Judgment by Confession that was entered here in 2012 is a void judgment. The case of *Yellowstone Cap., LLC v. Sun Knowledge Inc.*, 2017 NY Slip Op 32870(U) (Sup. Ct. 2017) is instructive. The court stated:

> If the requirements set forth in CPLR 3218 are not scrupulously followed, the judgment by confession will be considered invalid. A judgment by confession may be entered only in the county designated in the debtor's affidavit—entry of a judgment by confession in an unauthorized county will render the judgment **void** pursuant to CPLR 3218[b]. *Irons v. Roberts*, 206 A.D.2d 683, 614 N.Y.S.2d 792 [3rd Dept 1994]; *Williams v. Mittlemann*, 259 A.D. 697, 20 N.Y.S.2d 690 [2nd Dept. 1940]; *Terezakis v. Goldstein*, 168 Misc.2d 298, 640 N.Y.S.2d 1005 [S. Ct. N.Y. County]. (e.a.).

In this case, the infirmity is not merely filing the affidavit in the wrong county. It is using the statute for an entirely unauthorized purpose -- to confess judgment to a tort when the statute is limited to debts.  It is also undisputed that the Confession of Judgment statute "allows no confession of a judgment for a tort". *Burkham v. Van Saun,* 14 Abb. Pr. 163, 1873 N.Y. Misc. LEXIS 92 (N.Y. App. 1st Dist. 1873).  "The rule that confession of a judgment for a tort is not authorized is ancient and well established." *Franklin v. Muckley*, 189 Misc. 155, 70 N.Y.S.2d 815 (1947).  Where the clerk lacks authority to enter the underlying judgment, that judgment is rendered void *ab initio*. *Midland Funding v. Sidibe*, 2018 NYLJ LEXIS 2472, *6 (Civil Ct. NY, 2018), *citing Geer, Du Bois & Co. v. O.M. Scott & Sons Co., Inc.*, 25 A.D.2d 423, 266 N.Y.S.2d 580; *Gaynor & Bass v. Arcadipane* 268 A.D.2d 296, 700 N.Y.S.2d 818). Relief from void judgments is not discretionary. *Chambers v. Armontrout,* 16 F.3d 257, 260 (8th Cir. 1994).

**No Court Has Ruled On The Merits Of This Declaratory Action Seeking the Cancellation Of The Indebtedness Caused By The Judgment By Confession**

This argument is not proper on a motion to dismiss, but even if it were, this Court should reject it. The only court that would have jurisdiction to rule on the cancellation of the indebtedness is this bankruptcy court. While Judge Gordo correctly refused to enforce the Judgment by Confession, Judge Cristol gave it full faith and credit, even post satisfaction. That is entirely different from a decision on the merits -- that the Judgment by Confession was properly entered and valid. Selective has cited no judgment where any court has so ruled because no such decree exists.

Selective relies on *Sunnen v. United States HHS*, 2013 U.S. Dist. LEXIS 44951, at *8 (S.D.N.Y. Mar. 28, 2013), which stated: "Under the doctrine of res judicata, or claim preclusion, [a] final judgment **on the merits** of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Citing *St. Pierre v. Dyer*, 208 F.3d 394,

399 (2d Cir. 2000) (emphasis added). No court has ruled on the merits of the cancellation of the indebtedness caused by the Judgment by Confession.

A claim is precluded under this doctrine if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir. 2000). Again, the crucial prerequisite of "previous action" is lacking. There has never been a complaint filed anywhere asking to cancel the Judgment by Confession indebtedness.

As to collateral estoppel, the doctrine "precludes a party from relitigating an issue decided against him in a prior proceeding where he had a full and fair opportunity to litigate that point." *CIBC Mellon Tr. Co. v. Samuel Montagu & Co. Ltd.*, 2006 NY Slip Op 445, ¶ 1, 25 A.D.3d 492, 492, 810 N.Y.S.2d 127, 128 (App. Div.) (emphasis added). Furthermore, "[t]he identical issue must have been necessarily decided in the prior proceeding, and the party seeking the benefit of collateral estoppel bears the burden of demonstrating the identity of the issues in the present litigation and the prior determination." *Id.* Here, Selective has not met its burden.

Defendants never address the cancellation of the indebtedness but rather mention a motion to quash notice of filing filed in Miami-Dade County on May 21, 2014, pursuant to the domestication of the New York Judgment by Confession. That domestication action had been commenced on April 21, 2014 -- more than two years after the Judgment by Confession was obtained, even though NLG had commenced its foreclosure against Hazan in 2011 and is completely irrelevant to this one count complaint.

Defendants have never shown that either NLG or Kosachuk had "a full and fair opportunity to litigate" the cancellation of the Judgment by Confession indebtedness because it has never been raised or litigated before this instant adversary complaint.

Third, the Cristol Judgment was clearly not an opportunity to litigate the validity of the New York Judgment by Confession or cancel its indebtedness. Even Defendants' own Memorandum makes that point when it quotes from the Cristol Judgment that "this Court will attempt to determine the rights of the parties by giving full faith and credit to all the final judgments and orders." [Doc. No. 9, p. 27]. As the Bankruptcy Judge never allowed the parties to litigate the propriety of any prior judgment, it obviously does not qualify as "a full and fair opportunity to litigate" the validity of the New York Judgment by Confession or the cancellation of its indebtedness.

Fourth, Justice Hagler was never asked to cancel the Judgment by Confession indebtedness and never ruled on the merits of any of the various motions to vacate the Judgment by Confession. It is puzzling that Selective can argue for abstention on page 13 of its Memorandum [Doc. 9, p. 13] yet on pages 21-23 claim that Justice Hagler has already ruled on this issue so as to trigger res judicata, collateral estoppel and *Rooker-Feldman* on a cause of action unique to bankruptcy and never raised in state court.

## CONCLUSION

After much effort at unraveling Defendants' Motion to Dismiss, it should be clear that none of its arguments warrant dismissal of Kosachuk's Complaint as no court has ever been asked to cancel the indebtedness caused by the void Judgment by Confession until now.

**WHEREFORE**, for the reasons set forth above, Kosachuk respectfully requests that the Court deny Defendants; Motion to Dismiss, order that an answer be filed within 20 days and grant such other and further relief as the Court deems appropriate.

January 6, 2023.

Respectfully submitted,

Chris Kosachuk
*Pro Se Plaintiff*
854 Pheasant Run Rd.
West Chester, PA 19382-8144
(305) 490-5700
chriskosachuk@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of January 2023 a true and correct copy of foregoing was hand delivered to the Clerk of Court for electronic filing, which will electronically serve a copy of the foregoing document on all parties of record and was emailed directly to parties of record by the undersigned.

Respectfully submitted,

Chris Kosachuk
*Pro Se Plaintiff*
854 Pheasant Run Rd.
West Chester, PA 19382-8144
(305) 490-5700
chriskosachuk@gmail.com

## SERVICE LIST

**Via CM/ECF/EMAIL**
All parties of record

# EXHIBIT 1

December 15, 2015 Stipulation

# EXHIBIT 1

December 15, 2015 Stipulation



# The Law Offices of Ari Mor, Esq.

T: (347) 850-0578                                                           347 E 65th St., Suite 2RW
Email:Ari.Mor.Esq@gmail.com                                    New York, New York 10065

December 15, 2015

Via Email:
mbuls@nycourts.gov

Honorable Shlomo S. Hagler
c/o Meshulum Bulls
60 Centre Street, Room 335
New York, New York 10013

Attn: Chambers

           RE:    9197-5904 QUEBEC INC. v. NLG, LLC
                  Index Number: 101875/2012

## ADJOURNMENT OF MOTION SEQUENCE #8

Dear Hon. Judge Hagler:

       Pursuant to the attached Stipulation, the parties have agreed to Adjourn Motion Sequence

# 8 now returnable before the Court December 21, 2015. If the Stipulation's dates are not in

agreement with the Court please advise.

                           Very truly yours,

                           Ari Mor

CC:

Vlahadamis & Hillen, LLP
Attorneys at Law
 james@vhlawny.com
148 East Montauk Highway, Suite 3
Hampton Bays, New York 11946
T: 631-594-5400

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------------X

9197-5904 QUEBEC, INC.,                          **Index No.: 101875/2012**

       Plaintiff,                               **STIPULATION**

-against-

NLG, LLC, a Delaware Limited Liability Company

       Defendant.

-------------------------------------------------------------------------X

     **IT IS HEREBY STIPULATED AND AGREED** between the undersigned Attorneys for

the parties herein that Defendant's Motion now returnable before the Hon. Judge Hagler on

December 21, 2015, be adjourned to February 1, 2016 at 10:00 a.m., or as soon thereafter as

counsel may be heard;

     All papers to be considered under Motion Sequence #8 to be served on opposing Counsel

and filed with the Hon. Judge Hagler on or before January 25, 2016; and

     A facsimile or photocopy of this Stipulation shall be treated with the same force and effect

as would an original, and that this Stipulation may be signed in counterparts which, when taken

together, shall be deemed the whole.

Dated:  Hampton Bays , New York      Dated: New York, New York
       December         15, 2015           December 15, 2015

VLAHADAMIS & HILLEN, LLP      THE LAW OFFICES OF ARI MOR, ESQ

By:_____     By:_____
               , ESQ.          ARI MOR, ESQ.
Attorneys for Plaintiff           Attorneys for Defendant
148 East Montauk Highway, Suite 3    347 E 65th St, Suite 2RW
Hampton Bays, New York 11946      New York, New York 10065
(631) 594-5400             (347) 850-0578

# EXHIBIT 2

Sunbiz Judgment Lien Certificate



<u>Previous on List</u>    <u>Next on List</u>    <u>Return to List</u>                   Debtor Name Search

Submit

# Judgment Lien Detail

**Processed Thru** 05/17/2019

**To determine if a writ of execution on a final judgment was docketed with a sheriff prior to October 1, 2001, view the filing image.**

## Filing Information

**Document Number**    <u>J14000718030</u>    View image in PDF format

| | |
|---|---|
| **Status** | ACTIVE |
| **Case Number** | 14-10475 CA 10 |
| **Name of Court** | MIAMI-DADE COUNTY -CIRUCIT CT |
| **File Date** | 06/16/2014 |
| **Date of Entry** | 02/22/2012 |
| **Expiration Date** | 06/16/2019 |
| **Amount Due** | $3,387,569.20 |
| **Interest Rate** | 09.00 % |

## Name And Address of Judgment Creditor (Plaintiff)

SELECTIVE ADVISORS GROUP, LLC.
PRESIDENTIAL CIRCLE, 4000 HOLLYWOOD BLVD
SUITE 435 SO
HOLLYWOOD, FLORIDA 33309

## Name And Address of Judgment Debtor(s) (Defendant(s))

NLG, LLC
854 PHEASANT RUN ROAD
WEST CHESTER, PA 19382
**Document Number:** N/A

## Events

| Document Number | Event Type | Date | |
|---|---|---|---|
| <u>J14000893759</u> | Amendment Partial Release | 09/05/2014 | View image in PDF format |

<u>Previous on List</u>    <u>Next on List</u>    <u>Return to List</u>                   Debtor Name Search

Submit

Florida Department of State, Division of Corporations

Page 27 of 64

dos.sunbiz.org/scripts/jlidet.exe?action=DETLIST&inquiry_number=J14000718030&inquiry_date=049096485112965940&return_number=J140007180...    1/2

Page 28 of 64

dos.sunbiz.org/scripts/jlidet.exe?action=DETLIST&inquiry_number=J14000718030&inquiry_date=049096485112965940&return_number=J140007180…    2/2

# EXHIBIT 3

March 19, 2019 Hearing Transcript - Judge Jordan

1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2                          MIAMI DIVISION
                     CASE NO.  18-CV-21398-JEM
3

4       NLG, LLC,

5                       Plaintiff,

6           vs.

7                                        Miami, Florida
                                         March 9, 2019
8       SELECTIVE ADVISORS GROUP, LLC,   Pages 1-35

9                       ·Defendant.

10  _____

                      TRANSCRIPT OF MOTION HEARING
11            BEFORE THE HONORABLE JOSE E. MARTINEZ
                    UNITED STATES DISTRICT JUDGE
12            *THE HONORABLE ADALBERTO JORDAN PRESIDING*

13

14      APPEARANCES:

15      FOR THE PLAINTIFF:

16                      *ADR Miami, LLC*
                        BY:  JUAN RAMIREZ, JR., ESQ.
17                      1172 South Dixie Highway
                        #341
18                      Coral Gables, Florida 33146

19      FOR THE DEFENDANT:
                        *Marshall Grant, PLLC*
20                      BY:  JOEY MICHAEL GRANT, ESQ.
                        197  Federal Highway
21                      Suite 200
                        Boca Raton, Florida 33432
22
                        *Bushell Law, P.A.*
23                      BY:  DANIEL A. BUSHELL, ESQ.
                        6400 North Andrews Avenue
24                      Suite 505
                        Fort Lauderdale, Florida 33309
25

              PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                   TRANSCRIPT PRODUCED BY COMPUTER

REPORTED BY:          DAWN M. SAVINO, RPR
                     Official Court Stenographer
                     400 N. Miami Avenue, 10S03
                     Miami, Florida  33128
                     Telephone:  305-523-5598

_____

P-R-O-C-E-E-D-I-N-G-S

COURTROOM DEPUTY:  Case number 18-21398-civil-Martinez,

NLG, LLC versus Selective Advisors Group, LLC.  Counsel please

state your appearance, starting with the Plaintiff.

MR. RAMIREZ:  Good morning, Your Honor.  Juan Ramirez

on behalf of NLG and sitting here is Chris Kosachuk, the manager

of NLG.

THE COURT:  Good morning.

MR. GRANT:  Good morning, Your Honor.  Joe Grant and

Daniel Bushell on behalf of the Defendants Selective Advisors.

In the courtroom is also Sean Meehan, the manager of Selective

Advisors, as well as his wife, Mrs. Elizabeth Hazen.

THE COURT:  Good morning to all of you as well.

Okay.  I first need your help in understanding this

case.  Okay?  Because a lot has happened.

So the first thing we're going to do is deal with

Selective Advisors' motion to dismiss.  Okay?  So we'll deal

with that motion first, and you can try to help me out with

what's going on.

MR. GRANT:  Yes, Your Honor.  I'm happy to do so.

MR. RAMIREZ:  We have agreed beforehand that because

1   the motion to dismiss and the motion for summary judgment are so

2   similar, that he would have 15 minutes and I would have 15

3   minutes, and he would have five minutes and then I would have

4   five minutes.  If the Court wants to follow a different

5   procedure, that's fine.

6           THE COURT:  Well no, the sequencing is fine.  I don't

7   have any problems with that.  We'll see how it goes in terms of

8   time.

9           Okay.  You're on.

10          MR. GRANT:  May it please the Court, Your Honor.  Good

11  morning.  Joe Grant on above of Selective Advisors.

12          The motion to dismiss and the motion for summary are so

13  intertwined, and essentially our argument -- we make two

14  arguments in both pleadings.  We are arguing that this is forum

15  shopping.  That these issues have been litigated in prior

16  courts, they've been litigated in New York, there have been

17  orders that have already been ruled upon.  NLG's motion to

18  vacate the judgment, this is a judgment that was entered in

19  2012.  There had been a number of motions filed by NLG to vacate

20  the judgment.  Those were --

21          THE COURT:  One of them has been successful, right?

22  Wasn't some judgment set aside somewhere?

23          MR. GRANT:  No, Your Honor.

24          THE COURT:  Not at all, ever.

25          MR. GRANT:  No.  The judgment has not been set aside.

1    My client, Selective Advisors, was assigned the judgment --

2             THE COURT:  How about what happened in New York?

3             MR. GRANT:  That's ongoing, and that's part of our

4    other argument, Your Honor, is this is being actively litigated

5    in a New York District Court right now.  These very same issues.

6    So they're looking -- they have two cases ongoing at the same

7    time.  Right now, the same dispute is ongoing between NLG and

8    Selective in a New York federal district court.  Initially, it

9    was before Judge Shlomo Hagler in New York state court but then

10   we removed it to federal court.  NLG has filed a motion to

11   remand.  We filed an opposition on the motion to remand.

12            One of the arguments I want to make to this Court was

13   it is forum shopping.  There's two different federal judges that

14   now have the same issues in front of it, and our position is

15   it's a New York state judgment.  It's not appropriate for a

16   Florida federal court to be looking at a New York state court

17   judgment.

18            THE COURT:  But that's the judgment that was

19   domesticated, right?

20            MR. GRANT:  Yes. It was domesticated.

21            THE COURT:  And where is the original judgment from?

22            MR. GRANT:  It's from New York.  The original judgment

23   emanates from the New York proceeding.  It was Quebec versus NLG

24   in New York.

25            THE COURT:  If that's the judgment, why did you have to

1    domesticate it in New York again?

2          MR. GRANT:  Well, NLG domesticated it here in Florida

3    in an attempt to foreclose on Mrs. Hazen's homestead.  So NLG

4    brought the judgment down here and domesticated it, and that was

5    the matter that was pending before Judge Peter Lopez.

6          (Discussion between Plaintiff Counsel and client)

7          MR. GRANT:  I misspoke, Your Honor.  Selective

8    domesticated it here and then satisfied it.  I'm sorry.  My

9    mistake, Your Honor.

10          THE COURT:  I'm having trouble enough as it is.

11          MR. GRANT:  I know.  I'm trying to clarify and I

12    apologize for the confusion.  Selective domesticated --

13          THE COURT:  It's okay.  It's okay.  Start again --

14          MR. GRANT:  Okay.

15          THE COURT:  -- with the sequencing,

16          MR. GRANT:  Right.  The sequencing is that the judgment

17    in New York was assigned to Selective.  Selective took that

18    judgment, domesticated it here in Florida and then satisfied the

19    mortgage on Ms. Hazen's homestead.  And so they these issues

20    were litigated in front of a state court judge, Peter Lopez, who

21    acknowledged that Selective was the proper assignee of that

22    judgment and had a right to satisfy the judgment.

23          And my involvement in this case started when I filed an

24    adversary proceeding before Judge Cristol.  I'm a bankruptcy

25    practitioner also, so I filed an adversary proceeding in Ms.

1   Hazen's Chapter 11 case where I filed a complaint to determine

2   the extent, validity and priority of NLG's lien.  That matter

3   was litigated before Judge Cristol.  There was a two day trial

4   in front of Cristol.  Judge Cristol took in everything.  He took

5   in the Judge Lopez pleadings.  He took in Judge Gordo's

6   pleadings.  He took in orders from Judge Hagler in New York.

7   There's also a federal judge in New York that's ruled on this

8   issue, Judge Hagler.  And Judge Cristol spent about three and a

9   half months going over all of this.  And what emanated from that

10  trial, Your Honor, was the final judgment that Judge Cristol

11  entered on October 31st of 2017.

12          And so what you have is here, you know -- the two

13  arguments we've raised in our motion to dismiss are res judicata

14  and claim preclusion because these issues have already been

15  raised in other courts, other courts have already ruled on this,

16  and we also argue *Rooker-Feldman.*

17          THE COURT:  Let me ask you a question.  One of the

18  underlying claims in the case, and you have a lot of reasons why

19  you think I can't get to any of those claims, but one of them is

20  that at the very beginning, at the very onset of this, there was

21  a misrepresentation as to who the original judgment was against.

22  Is that contention correct?

23          MR. GRANT:  No.  Well, that's a contested contention.

24  That's a subject --

25          THE COURT:  Nothing from that side.  If you want to

1    speak to your lawyer, I'll give you whatever time you want to

2    speak to him.  Okay?  But I can only listen to one at a time.

3         So one of the contentions, and I'm not saying it's

4    true, one of the -- let me put it this way.  One of the

5    allegations is that Quebec, way on when, misrepresented who the

6    judgment debtors were when it was trying to domesticate the

7    judgment in Pennsylvania.

8         MR. GRANT:  Yes.

9         THE COURT:  I am asking you whether that allegation is

10   factually correct.

11        MR. GRANT:  No.

12        THE COURT:  What did Quebec represent when it sought to

13   domesticate the judgment in Pennsylvania as to who the debtors

14   were?

15        MR. GRANT:  So there as an affidavit that, I believe,

16   was signed by one of the managers of Quebec.  That was the

17   confession of judgment that emanated from that Pennsylvania

18   proceeding.  That was then -- let me get this right.  Let me ask

19   a quick question about Quebec.

20        Your Honor, that's a different judgment that's in

21   Pennsylvania.  That's why it's confusing.

22        THE COURT:  If you're confused, I'm confused.

23        So my question to you is, one of the underlying

24   allegations in this case is that way back when, at the beginning

25   of time, Quebec, which I understand is your client's

1    predecessor, right?

2         MR. GRANT:  They were the assignor of the judgment.

3         THE COURT:  So predecessor in some way, shape or form

4    with regard to the judgment.  That they misrepresented who the

5    debtors were when they were domesticating the judgment in

6    Pennsylvania.

7         Again, is that allegation correct?

8         MR. GRANT:  Correct.  And the issue was raised in

9    Pennsylvania and the court denied that.

10        THE COURT:  You know, you guys have to learn that you

11   have to answer my questions.

12        MR. GRANT:  I know.  I heard that from the previous

13   one.

14        THE COURT:  And then you can explain.  I'll ask it a

15   third time.  It's the last time I'm going to ask it.  I'm really

16   trying not to lose my patience.

17        Did Quebec misrepresent the judgment debtors when it

18   sought to domesticate the judgment in Pennsylvania?

19        MR. GRANT:  Here's why I think it's confusing, Your

20   Honor, and I'm going to try to answer your question.  It is a

21   different judgment.  I know I've made a mistake saying it was

22   the same tie-in with the judgment.  That was the judgment

23   against Mr. Kosachuk individually.  Those issues aren't related

24   to the judgment at question that they are now trying to vacate

25   in this proceeding.  It is -- it's a related party, but it is

1    not the judgment that they are now seeking to vacate.  So it's

2    somewhat of a confusing issue because it's separate from all the

3    stuff that's going on before Judge Cristol and what's gone on in

4    front of Judge Hagler.

5            THE COURT:  There were never any misrepresentations as

6    to who the judgment debtors were when anyone was trying to

7    domesticate one or more of these judgments.

8            MR. GRANT:  I don't believe so Your Honor, no.

9            THE COURT:  Okay.

10           MR. GRANT:  So what we're dealing with though is a

11   different judgment.

12           THE COURT:  I'm not going to find any such

13   misrepresentations in this record, regardless of whether or not

14   I can reach them.

15           MR. GRANT:  Okay.

16           THE COURT:  Right?

17           MR. GRANT:  Yes.

18           THE COURT:  Okay.  I hope you're confident about that.

19           MR. GRANT:  Okay.  So following from that, Your Honor,

20   though you have obviously NLG's actions in New York.  They have

21   tried to vacate the judgment against -- the confession judgment.

22   They've tried to vacate that several times and those motions had

23   been denied repeatedly.  When Selective domesticated the

24   judgment here in Florida, Judge Peter Lopez, they moved to

25   vacate the judgment here arguing the same things, that the

1    judgment was procured by fraud.  Judge Lopez denied that order.

2            THE COURT:  Who was the judgment -- the judgment

3    involving Mr. Kosachuk.

4            MR. GRANT:  Yes.

5            THE COURT:  That judgment was only against him, right?

6            MR. GRANT:  Yes.  And that's an unrelated judgment.

7    That's not what we're talking about.  Yes.

8            THE COURT:  That's what I'm talking about.

9            MR. GRANT:  Yes.  Only against him.

10            THE COURT:  When Quebec domesticated that judgment in

11    Pennsylvania, did it not represent that the judgment was against

12    him and against NLG.

13            MR. GRANT:  I don't know the answer to that, Your

14    Honor.

15            THE COURT:  How could you not, when it's an allegation

16    in the complaint.

17            MR. GRANT:  I don't.  I don't know the answer to that,

18    Your Honor.  I can't stand here --

19            THE COURT:  It's Paragraph Number 15 of the complaint.

20            MR. GRANT:  I understand.

21            THE COURT:  That's a complaint you're moving to

22    dismiss.

23            MR. GRANT:  Yes, Your Honor.

24            THE COURT:  You haven't investigated that?

25            MR. GRANT:  Standing right here, I don't know the

1    answer to it.

2              THE COURT:  Then how could you tell me confidently

3    before that there were no misrepresentations as to the judgment.

4              MR. GRANT:  I probably shouldn't, Your Honor.  I know

5    that I've known the issue before, and at this moment on this

6    podium, I've forgotten the answer to that question, Your Honor,

7    so I should probably back off that statement.

8              THE COURT:  So now you're not sure.

9              MR. GRANT:  Well again, I'm sure that it's not the same

10   judgment.  I'm sure that it's not what we're dealing with.

11             THE COURT:  I'm not asking you whether it's the same

12   judgment.  My question didn't start out with that premise but

13   every time I ask the question again, I get a sort of different

14   answer.

15             MR. GRANT:  Well --

16             THE COURT:  And so that only leads more to my

17   confusion, but also starts making me very skeptical about some

18   of the other things that you're telling me.

19             MR. GRANT:  I understand, and I appreciate that, Your

20   Honor.  And I'll try to clarify to get more information.

21             THE COURT:  I just don't understand how -- if that's a

22   central allegation in the complaint that you're moving to

23   dismiss, that's an allegation which you have to accept at face

24   value, right?

25             MR. GRANT:  Yes.  For purposes of a motion to dismiss,

1    yes, Your Honor.

2            THE COURT:  Go ahead.  You have five minutes left.

3            MR. GRANT:  Okay.  Well, so we've argued obviously the

4    fact that these matters have been -- from a res judicata fact,

5    these matters have already been litigated in other courts.

6    Courts have ruled on this.  They denied motions to vacate.  They

7    denied motions -- in New York court there's been denials of

8    pleadings in Pennsylvania.  Peter Lopez's order here in Florida,

9    he denied their motion to vacate.  Judge Cristol heard all these

10   arguments, Your Honor, by the way, in terms of the Quebec

11   judgment.  All these other judgments, this was in front of Judge

12   Cristol.

13           THE COURT:  They argued the same issues that they're

14   arguing now?

15           MR. GRANT:  Same issues.

16           THE COURT:  And what did Judge Cristol say about

17   whether or not the judgment debtors had been misrepresented by

18   Quebec?

19           MR. GRANT:  He said that that's for you to take up in

20   state court somewhere else.

21           THE COURT:  So he didn't reject the allegation.

22           MR. GRANT:  No, he didn't reject the allegations, Your

23   Honor.

24           THE COURT:  What did he say then.  You have to go

25   where?

1      MR. GRANT:  I was at the trial, it was a two day trial

2    and at the conclusion of the trial, Judge Cristol specifically

3    asked both sides are all of the orders that are in front of me

4    final and nonappealable.  Both sides acknowledged yes.  And if

5    you look at Judge Cristol's final judgment, Your Honor, he

6    specifically says all interested parties to the various

7    controversies are now before this court and subject to its

8    jurisdiction.  And he goes on to state that all of the final

9    judgments and orders entered in the other courts as those

10   judgments have become final and not subject to appeal.

11      So the representation was made to Judge Cristol that

12   everything that we were presenting, all the documents we were

13   presenting to Judge Cristol which included all of the arguments

14   they're making about Quebec and the other parties and everything

15   that transpired in other courts, they represented, as did we,

16   that those orders were final and nonappealable.

17      And then after Judge Cristol comes with their final

18   judgment, which is up on appeal, then they file this separate

19   action after the fact looking to ask this Court to rule on New

20   York law to vacate that underlying judgment.  I think there's a

21   waiver argument.  I certainly think there's a res judicata

22   argument that these issues were already raised.  We've already

23   been in trial on these issues.

24      THE COURT:  Judge Cristol's order is on appeal to the

25   district court somewhere?

1        MR. GRANT:  Yes.

2        THE COURT:  Before whom?

3        MR. GRANT:  I believe Judge Gayles, Your Honor.

4        MR. RAMIREZ:  Moreno.

5        MR. GRANT:  Moreno.  There's multiple appeals.  We have

6   an appeal of the confirmation order and an appeal of the

7   discharge order.  So Judge Moreno has the appeal of Judge

8   Cristol's final judgment.

9        THE COURT:  When was that appeal filed?  Do you

10  remember?

11       MR. GRANT:  Well, there was an issue regarding having

12  it certified.  I believe the appeal was taken in, I want to say

13  April of this past year.

14       THE COURT:  No, not certified.  When was the appeal

15  filed with the district court from Judge Cristol's order?

16       MR. GRANT:  October of 2018.  So it's only been a few

17  months.

18       THE COURT:  Okay.  So I'll ask you a procedural

19  question.  Why isn't the right thing to do here procedurally is

20  to deny everyone's claims, everyone's motion, without prejudice,

21  and I'll ask Mr. Ramirez the same thing, until Judge Moreno

22  rules on the Cristol appeal.  Because if Judge Cristol's appeal

23  -- excuse me.  If Judge Cristol's order is upheld, then you look

24  at the case in a certain way.  If Judge Cristol's order is set

25  aside, then at least your reliance on that order no longer has

1    much play.

2           MR. GRANT:  Your Honor, I would be 100% -- that would

3    be a satisfactory result for us if this matter was to be stayed

4    or postponed until a resolution of that appeal.  We would

5    absolutely do that, because I do think that changes the tone of

6    everything.  I don't know how Mr. Ramirez feels because we've

7    never talked about it.  We are okay putting the pause button

8    here pending what happens with that appeal.

9           THE COURT:  Okay.  All right.  Thank you very much.

10   I'll give you five minutes afterwards.

11          MR. RAMIREZ:  Judge, I have a different order of

12   looking at this, but if you want me to look at it through the

13   chronology, I know it very well.  It's taken me five years to

14   get there, but I've finally figured it out.

15          This originated with a judgment entered in favor of

16   Lorret against Mr. Kosachuk.  And they had $48,000 judgment

17   against Mr. Kosachuk.  They went to Pennsylvania to domesticate

18   that judgment and because NLG was on the caption of the case,

19   they were able to confuse a Pennsylvania court to grant a

20   charging order against NLG.  They were not a judgment debtor,

21   they were just on the caption.  They used that charging order to

22   go back to New York and enter and obtain a $5 million judgment

23   by confession.  And there's a statute that allows this judgment

24   by confession to be entered on a debt.  They used that charging

25   order to get a $5 million judgment on a tort.  They allege, and

1    can you look at the five pages that were filed with the New York

2    court, they're attached to our original complaint and they're

3    just five pages.  And it's obvious that they not only misused

4    the charging order, but they didn't comply with the statute that

5    allows the judgment by confession.  That judgment was obtained,

6    of course, with no due process, and the only way they can get

7    around the due process is when the Defendant, in order to get a

8    loan, they sign an affidavit.  Here, the affidavit was signed by

9    the Plaintiff, Mr. Raymond Houle, acting for -- who was the only

10   shareholder and officer of Quebec, signed the affidavit on

11   behalf of NLG and they said they owe $5 million on a debt based

12   upon fraud and abuse of process.

13          THE COURT:  Okay.  I know that those are some of the

14   facts leading up to your complaint in this case but one of the

15   things that Selective argues is that in one shape or form, these

16   issues, or related issues, have been dealt with by Judge Lopez

17   in the state court here, by Judge Cristol in the bankruptcy

18   court here, that there's another case pending somewhere else.

19   There's an appeal of the Judge Cristol order, and that you are

20   trying to get, like, a fourth bite at an apple by going yet to

21   another forum with another complaint.

22          MR. RAMIREZ:  Before we go there, if I may, they have

23   never addressed the merits of our argument which is this

24   judgment is void.  It was void in 2012, it was void in 2014,

25   it's void today, and we can raise that at any time.

1      THE COURT:  I have some of those same concerns.

2  Nevertheless, if that issue has been litigated --

3      MR. RAMIREZ:  No, Judge.  Never been litigated.

4      THE COURT:  Okay.  What did Judge Lopez's order, if

5  anything, resolve.

6      MR. RAMIREZ:  Okay.  Judge Lopez was asked -- he had

7  the domestication of the $5 million judgment, and he basically

8  told NLG I'm not going to do anything if you don't post the $5

9  million bond.  Obviously, we couldn't afford to post that so it

10  went into collection and he entered an order assigning a prior

11  judgment that NLG had obtained against Ms. Hazan on a

12  foreclosure, but they didn't ask for foreclosure so it was just

13  a money judgment.  So he assigned that.  In the meantime, the

14  case was up in the Third District.  The Third District said it

15  was not an election of remedy when you filed a new mortgage

16  foreclosure because you had the prior judgment.  So they said go

17  back to state court and this mortgage should be enforced.  We

18  had a mandate.

19      So we go back to state court and we spent more than a

20  year to obtain Judge Gordo to grant us our foreclosure because

21  of the proceeding in front of Judge Lopez.  In the meantime, we

22  filed our motion vacating New York because this judgment is

23  void.  And that was in 2014, Judge.  And we have been trying to

24  get that matter heard on the merits since then.

25      And we had a hearing on November 8th in front of Judge

1    Hagler who has that case and he said I don't remember having

2    ruled on the merits.  He said I have never, that I can recall,

3    and I'm quoting from the transcript which is at ECF Number 103,

4    Bates 32, I have never, that I can recall, unless you can show

5    me a decision, rendered a decision on the merits.  Selective's

6    counsel in New York -- they had two lawyers present, they never

7    pointed out to the judge that he had already decided.

8           So he asked for memos of law that were due on January

9    7th, and instead of filing a memo, they, for the first time,

10   removed the case to federal court and filed a notice of removal

11   and they're trying to transfer that to Judge Cristol.  They're

12   three years too late, at least over two years too late, to file

13   a notice of removal.  We filed a motion to remand and that's

14   pending in front of Judge Cote in New York.  But she's not going

15   to -- there's nothing --

16          THE COURT:  So the question that I asked your

17   colleague, given the stuff that's going on with that case and

18   the appeal that's pending from Judge Cristol's order, why isn't

19   the correct procedural thing to do to just deny everybody's

20   motions without prejudice, let those two decisions come out

21   whichever way they come out, and then see where the lay of the

22   land is to figure out what claims are left, what claims are not

23   left, what defenses are left, what defenses are not left.

24          MR. RAMIREZ:  Well Judge, that would be fine except we

25   have been trying for five years to get this judgment vacated.

1    It's a void judgment, it should be vacated, we shouldn't have to

2    wait any longer.  We've been trying to get a hearing in front of

3    Judge Hagler in New York and he keeps putting it off.  One time

4    --

5         THE COURT:  You're no longer in front of him anymore,

6    right?  You're technically in front of the district court.

7         MR. RAMIREZ:  If it gets remanded because it's

8    untimely, then the notice of removal was untimely.  And besides,

9    they're the plaintiff.  Since when does a Plaintiff get to

10   remove a case that they filed in state court?  The statute says

11   only for the defendant.

12        But be that as it may, they're way two years too late

13   to do that.  And Judge Hagler has been -- the first time when he

14   was over here, he says no further continuances, the Plaintiff

15   filed for bankruptcy and they went -- the bankruptcy court and

16   that was found to be a frivolous and was dismissed.  Then the

17   day before the hearing the next time, they said oh, the judgment

18   has been satisfied.  We didn't pay anything on the judgment.

19   All of a sudden it's been satisfied?  That's when Judge Lopez

20   then dismissed the domestication case and Judge Gordo was able

21   to enter the final judgment of foreclosure.

22        THE COURT:  Okay.  From your perspective, what did

23   Judge Cristol resolve or not resolve and what's up on appeal

24   now?

25        MR. RAMIREZ:  Judge Cristol said very clearly I'm

1    taking all those judgments as full -- on the full faith and

2    credit, I'm not going to start litigating a motion to vacate in

3    New York.  You know, and under *Rooker-Feldman* he couldn't and we

4    never asked him to do that.

5         THE COURT:  So what did he ultimately decide then?

6    What was before him?

7         MR. RAMIREZ:  Before him was a claim that the judgment

8    from Judge Lopez controlled, even though Judge Lopez's order

9    predated Judge Gordo.  So he basically acted as an appellate

10   court of Judge Gordo's foreclosure judgment.

11        THE COURT:  And what's on appeal now?

12        MR. RAMIREZ:  The *Rooker-Feldman* is our first argument,

13   that he didn't have jurisdiction to retry the case.  Judge Gordo

14   ruled on every single issue that they raised at the adversary

15   proceeding, and there's a 15-page order that Judge Gordo entered

16   taking all those arguments and denying them relief.  Selective

17   Advisors, although they weren't technically a party, under

18   Florida law they were a party because they appeared repeatedly

19   in front of Judge Gordo and made the same arguments in front of

20   Judge Gordo and Judge Gordo denied them.

21        THE COURT:  What did Judge Cristol do with regards to

22   Judge Gordo's order?

23        MR. RAMIREZ:  He didn't like it.  He just basically --

24   if you read his order and put it side by side with Judge Gordo's

25   order, they're irreconcilable.  He went and said he didn't like

1    what you did, he even criticized the Third District that they

2    weren't fully informed about the judgment in New York.  And that

3    was not --

4            THE COURT:  So what was his ultimate ruling is what I'm

5    trying to get to.  If he took the other judgments as having been

6    final and gave them full faith and credit, what was his actual

7    ruling in the case?

8            MR. RAMIREZ:  He wiped out our mortgage by setting off

9    this $5 million judgment.  So our $5 million mortgage went up in

10   smoke with that order.  And this is why we don't want to delay

11   because that judgment, even though --

12           THE COURT:  Exactly.  If you win -- if you win that

13   appeal, is this complaint moot?

14           MR. RAMIREZ:  No, because we have other issues.  If we

15   go back and foreclose, we may have deficiency.  And they keep

16   using this judgment, even though they say it was satisfied, and

17   they took supposedly, according to them, partial payment and

18   gave a full satisfaction, then they turn around and had Judge

19   Cristol give them credit for the entire $5 million.

20           This judgment has been haunting us, Judge, since 2012,

21   or since we filed it in 2014.  And they keep using it to block

22   our right to foreclose on this Fisher Island property that she's

23   been living there without paying anybody, the first, the second,

24   the taxes.  Judge, we want our day in court.  All these orders

25   that they cite, none of them are on the merits.  The only two

1    jurisdictions that would have authority to vacate this judgment:

2    One is Judge Hagler, and that case has been pending since 2014,

3    and we got fed up with Judge Hagler and we filed this one.  And

4    there's case law in New York, if you look at the New York law,

5    there's two ways to vacate that judgment.  One is by filing a

6    motion, and the other one is by filing a plenary action.  This

7    is the plenary action that they argued to Judge Hagler we had to

8    file.  They said to Judge Hagler you can't entertain this thing

9    by motion, they have to file separate plenary action.  And now

10   they're saying no, we shouldn't file plenary action.

11          They're taking inconsistent positions -- I'm sorry.

12          THE COURT:  But you think that if there are no

13   procedure problems, that this Court has the jurisdiction to set

14   aside a New York or Pennsylvania judgment?

15          MR. RAMIREZ:  Yes, Judge.  Under New York law, we have

16   a right to file or we have the obligation, according to them, to

17   file a plenary action.

18          THE COURT:  Here or in New York?

19          MR. RAMIREZ:  They don't specify.  But if we had filed

20   it in New York, Selective could say well, we have no

21   jurisdiction because this is -- we're a resident of Florida.  So

22   they could have had the case dismissed from New York if we had

23   filed it over there.  Selective is domiciled in Florida, they

24   have not challenged diversity, they have not challenged venue.

25   This is the proper -- this is our plenary action that allows

1    this under New York law.

2            But I want to emphasize this, Judge, you don't need to

3    go into all this history of the case.  If you just look at those

4    five pages, you'll see that they misused the statute that allows

5    the judgment by confession and that's how they get around not

6    serving the Defendant, not giving them notice, not giving them

7    an opportunity to be heard.

8            And there's a case out of New York, the Fiori case,

9    that goes into this being a statute that has to be strictly

10   enforced because it takes away people's rights.  They get a

11   judgment automatically just filing an affidavit.  And it's not

12   intended for torts, it's only intended for a mortgage.

13           I don't know if you have any concern with all the other

14   orders because none of them had the jurisdiction to vacate the

15   judgment, only this Court and only Judge Hagler.  We asked --

16           THE COURT:  It's odd that -- it seems odd, maybe not

17   wrong, but odd, that a federal district court in South Florida

18   is being asked to set aside a judgment from New York or

19   Pennsylvania as fraudulent.  That just seems odd.

20           MR. RAMIREZ:  Well, it's allowed under New York law and

21   it's the only -- the only --

22           THE COURT:  New York law allows you to sue anywhere to

23   do that?  As long as you have jurisdiction?

24           MR. RAMIREZ:  They don't specify where, but they say

25   plenary action has to be a separate action because it could

1    involve factual disputes and that's not proper by motion.  They

2    do allow a judgment creditor of the corporation, a judgment

3    debtor to sue by motion.  But if it's a judgment debtor -- and

4    they argued that themselves to Judge Hagler, it has to be by

5    plenary action.

6           If we had filed, because of diversity, an action in New

7    York, that's not the residence of NLG or Selective, so it could

8    have been dismissed for no jurisdiction in New York.  This

9    Court, however, has jurisdiction, and I guess we could have

10   filed it also in Delaware, but not in New York.  We have no

11   jurisdiction in New York because none of the parties are

12   residents of New York.

13          THE COURT:  Okay.  Thank you very much, Mr. Ramirez.

14          MR. GRANT:  Thank you again, Your Honor.  I'd like to

15   make a point about the New York proceeding.  As I said before,

16   it's one thing to have one proceeding where you're looking to

17   vacate, and Your Honor centered in on the point that we're

18   trying to make here, that this is not the appropriate place to

19   vacate a New York judgment.

20          THE COURT:  Well, did you represent or tell -- or

21   somebody on Selective's side tell Judge Hagler that it had to be

22   a plenary action?

23          MR. GRANT:  Yes, that argument was made.

24          THE COURT:  And where does the plenary action get

25   filed?

1          MR. GRANT:  I would argue that it gets filed in New

2     York. And it's currently pending in New York.

3          THE COURT:  And your clients would agree to personal

4     jurisdiction there?

5          MR. GRANT:  It's already being litigated.  We already

6     filed pleadings in that case.

7          THE COURT:  That's not my question to you.

8          MR. GRANT:  What's the question?

9          THE COURT:  My question to you is if a plenary action

10    were filed in New York, your clients would subject themselves to

11    personal jurisdiction there?

12         MR. GRANT:  Yes.  But I'm saying it's already been

13    filed.  They're already seeking that relief, and that action is

14    already pending in New York.

15         THE COURT:  That's the one that you removed?  That

16    Selective removed to federal court?

17         MR. GRANT:  Yes.

18         THE COURT:  When did you remove it?  How long after the

19    complaint was filed?

20         MR. GRANT:  No, it wasn't a plenary action, it was

21    their motion to vacate that was removed.  So a plenary action

22    has not been filed.

23         THE COURT:  Right.  It's the motion to set aside the

24    judgment that you removed.

25         MR. GRANT:  We would agree to New York though as the

1   appropriate place for a plenary action.

2           So if I could, Your Honor, I'd like to go back to Judge

3   Cristol's final judgment because on Page 7 of his final

4   judgment, Judge Cristol says after reviewing the history of the

5   proceedings between the parties, it is evident the Gordo

6   foreclosure judgment does not resolve all issues in NLG's favor.

7   The judgment, the Lopez assignment order, the Gordo foreclosure

8   judgment all control this Court's decision going forward.  Then

9   the Court goes on to say at that point that any interest that

10  NLG has in the debtor's property is extinguished.

11          So Judge Cristol actively looked at each one of these

12  rulings.  He looked at Judge Lopez, what happened there; he

13  looked at Judge Gordo, what happened here.  And remember, there

14  was a complaint to determine the extent, validity and priority

15  of their mortgage on the debtor's property.  Judge Cristol had

16  every right to review that because that's what bankruptcy courts

17  are empowered to hear to the extent that it operates as a lien

18  on the debtor's homestead.  So he heard all of this.  These

19  issues have been analyzed, and at the end of the day Judge

20  Cristol said no.  NLG, you're done.  Your proof of claim is

21  disallowed in its entirety, Judge Cristol struck their claim,

22  and Judge Cristol also says in this final judgment that

23  Selective was properly assigned the final judgment; that

24  Selective satisfied that judgment and the mortgage, and that NLG

25  has no further rights on the property.  And that's all set forth

1   in that final judgment.  Judge Cristol spent the time, the

2   exhaustive time, going through all of these orders and rulings

3   and judgments.

4            And I would also like to point out, Your Honor, that

5   the Exhibit C in my motion to dismiss is an order remanding the

6   case that was signed by a District Court Judge McMahon in

7   federal court in New York.  And this Court goes through the

8   history.

9            THE COURT:  In what case?

10           MR. GRANT:  This is the case that's pending -- it was a

11   Judge Hagler case that was removed to district court by NLG and

12   so --

13           THE COURT:  So they removed one and you removed one?

14           MR. GRANT:  Well, we removed it and then it was

15   remanded back, and now it's since been removed again.  It's

16   complicated, I understand.  But Judge, it's the same case.

17           THE COURT:  I know the same case is going on

18   everywhere.

19           MR. GRANT:  Yes.  And that's part of the problem.

20   That's why we're here, Your Honor.  We don't think it should be

21   going on everywhere.  We think that, as your suggestion was,

22   this could be stayed pending the appeal of the final judgment

23   and whatever happens in New York.  It doesn't make sense to have

24   multiple proceedings going on where we're all incurring fees and

25   costs and there's the possibility of inconsistent rulings.

1    We've litigated these issues.

2              THE COURT:  Okay.

3              MR. GRANT:  Judge McMahon, in her order, she goes

4    through the history where they have previously moved to vacate,

5    they moved based on fraud, she denied it.  She also says at the

6    end that they thought that the NLG should be sanctioned for

7    wasting the court's time.  That's Exhibit C in my motion to

8    dismiss.  That's another judge that has looked at this and said

9    you're getting another bite at the apple, it's enough, these

10   issues have already been ruled on, you haven't appealed.  None

11   of these issues.  Judge Lopez they never appealed.  They never

12   appealed any of the state court decisions in New York that

13   denied their motion to vacate.  So that's where we were arguing

14   the *Rooker-Feldman Doctrine*, that this is really just another

15   attempt to reargue the same issues that you could have argued

16   back then.

17             I think res judicata applies, I think *Rooker-Feldman*

18   applies in terms of both the arguments that were raised or could

19   have been raised in these proceedings but weren't.

20             THE COURT:  All right.  Thank you very much.

21             MR. GRANT:  Thank you, Your Honor.

22             MR. RAMIREZ:  Judge, of course they would agree to

23   jurisdiction so we have to start all over again in New York to

24   get to the point where we are today.  That doesn't make any

25   sense, Judge.  This is why this has taken so long because they

1   keep delaying, delaying, delaying.  They filed for bankruptcy

2   when we had a hearing scheduled.  They filed a satisfaction of

3   this judgment when they had a hearing scheduled.  That order by

4   Judge McMahon was entered while the satisfaction was pending and

5   there was no active case litigating in the New York court, so

6   she dismissed because there was no live action.  They don't

7   mention that after that counsel submitted a letter that was

8   acknowledged by the Court and said memo endorsed.  It's a

9   strange procedure in New York, they accept letters and they rule

10  upon the letter.  So she actually denied any sanctions and

11  enforced the memorandum.  There was no hearing, there was

12  nothing.  There was just -- we were actually removing it back

13  then and they remanded.  Now they're the ones wanting it

14  removed.

15          THE COURT:  I know, because you're all trying to get in

16  to favorable fora.

17          MR. RAMIREZ:  No, we are trying to get a ruling, Judge.

18  We have not had a ruling on the merits of this void judgment.

19  It's void when it started in 2012 and it's void today.  They

20  have never addressed it in any --

21          THE COURT:  But if you moved to vacate in New York, why

22  shouldn't I let that run its course?

23          MR. RAMIREZ:  Judge, we've been at it for five years.

24          THE COURT:  That's not my problem.

25          MR. RAMIREZ:  But they have case law in New York that

1    says we can do it by plenary action, and they're the ones that

2    were arguing in front of Judge Hagler that we should do this.

3    And now they're saying no, we have to go back to Judge Hagler.

4    Where are we going to get a ruling on the merits, Judge?   Nobody

5    has ruled only the merits of this argument that we have.   It's

6    improper because --

7            THE COURT:   So Judge Cristol didn't do it?

8            MR. RAMIREZ:   No, Judge Cristol didn't want to hear

9    about it.   He said is the judgment final and nonappealable.   We

10   didn't find out about it for over a year so yes, it's final and

11   nonappealable.   That's why we filed a motion to vacate.

12           THE COURT:   So what did Judge Cristol rule upon then?

13           MR. RAMIREZ:   He did not want to get into the merits --

14           THE COURT:   I know.   What did he rule?   His ruling is

15   on appeal, so he had to rule something.

16           MR. RAMIREZ:   He didn't rule directly on the Quebec

17   judgment in New York.

18           THE COURT:   I know.   What did he rule on?

19           MR. RAMIREZ:   He ruled a long opinion that I don't

20   exactly remember what he said about the New York judgment, but

21   he accepted everything as valid, final and unappealable.

22           THE COURT:   But what did he rule upon that you're

23   unhappy with that you're now appealing?

24           MR. RAMIREZ:   That they're using a full $5 million to

25   wipe out our mortgage.

1          THE COURT:  That's what he did, he wiped out your

2     mortgage.

3          MR. RAMIREZ:  Exactly.  In fact, he said we owe them

4     money.  It's inconceivable, because if you read Judge Gordo's

5     order, she denied all those arguments.  And that -- by the way,

6     after Judge Gordo ruled, they filed an appeal to the Third

7     District while the bankruptcy was pending, and then they

8     dismissed that appeal.  So their remedy, if they didn't like the

9     foreclosure, was to file an appeal, not to have Judge Cristol

10    revisit everything and act like an appellate court.  And that's

11    the basis of our appeal to Judge Moreno.

12         THE COURT:  Okay.  Well, I'm going to look at

13    everything again, but I will tell you that given that this is

14    court number three of other actions that are, at the very least,

15    interrelated, whatever is going on in New York now, the action

16    to vacate which has been removed to federal court and you're

17    waiting for a decision on your motion to remand that case back

18    to New York state court, the pending appeal of Judge Cristol's

19    order which set aside your mortgage, my inclination is just to

20    at least wait until the Judge Cristol appeal is done before

21    figuring out what's left and what to do.

22         MR. RAMIREZ:  But Judge, if you only look at those five

23    pages, you can see that our argument is valid.

24         THE COURT:  What do I do if I rule and Judge Moreno, in

25    the appeal, decides something that's contrary to what I rule?

1    what happens then?

2              MR. RAMIREZ:  Well, he's not dealing on this judgment

3    being void or vacated, he's dealing with whether *Rooker-Feldman*

4    was violated when Judge Cristol revisited Judge Gordo's order.

5              THE COURT:  And if he says that Judge Cristol did not

6    violate *Rooker-Feldman* and your mortgage remains wiped out, what

7    do I have left to do here?  If you lose the appeal from Judge

8    Cristol's order, what's left here?

9              MR. RAMIREZ:  Well, we still have a void judgment and

10    we can go back with a Rule 60 in front of Judge Cristol and

11    Judge Moreno.  This is a void judgment, Judge, and we have never

12    gotten a ruling on the merits of our argument which is a void

13    judgment.  Judge Lopez didn't want to entertain it.  He said, in

14    fact, on the record, go back to New York.  I'm not going to go

15    beyond -- this judgment is full faith and credit.  Normally, you

16    go back to a judge on a motion to vacate and you get a ruling

17    right away.  It's been since May of 2014 that our motion to

18    vacate has been pending in front of a New York judge and now,

19    they managed to delay it again by filing this notice of removal.

20    They've delayed, delayed, delayed and of course, they would just

21    as soon have you delay on this issue too because that plays

22    right into their hand.

23              THE COURT:  Why shouldn't I abstain?

24              MR. RAMIREZ:  Because they are the ones that remove it

25    to federal court.  They're agreeing to federal jurisdiction.

1    THE COURT:  But you're moving to remand.  You want it

2    out of federal court, you want it back in state court.

3    MR. RAMIREZ:  We want a ruling.  We just want a ruling,

4    Judge.  If Judge Hagler would rule on the merits, then at least

5    we could have an appeal of his ruling, but he hasn't ruled.

6    THE COURT:  Okay.  All right.  Thank you very much.

7    Let me just say one thing.  Even if I agree with

8    Selective Advisors' arguments as to why this can't be reached,

9    I'm going to dig into what happened in this case.  If I believe

10    and I find that there was some wrongdoing in obtaining the

11    judgments at issue, I'm going to put it in the order and I'm

12    going to let the consequences fall where they may.  So I just

13    want you to be aware of that.  So even if you win, the battle,

14    you may end up losing the proverbial war.

15    MR. GRANT:  Yes, Your Honor.  And I would ask this

16    Court to pay attention to Judge Cristol's order.  He went

17    through great lengths to explain the history and --

18    THE COURT:  Yes.  The problem is that you can't tell me

19    with any confidence that there were no misrepresentations about

20    the judgment debtor when Quebec first domesticated the judgment.

21    That's a real concern.  You start out -- that you start out with

22    a judgment that says judgment against X, and by the time that

23    judgment gets domesticated, it says judgment against X and Y.

24    That's a concern.  It may not be determinative of everything,

25    you may be right that this Court shouldn't reach it at this time

1    and that there are all sorts of bars in place, I get that and

2    I'm going to look at all of them carefully.

3         But if I find, upon my review of everything, that

4    something went wrong somewhere, I'm going to put it in writing.

5         MR. GRANT:  Okay.  And I'll address that in writing,

6    Your Honor.  I'll respond with the facts that may give rise to

7    that.  I'm sorry that I wasn't as familiar with it standing in

8    front --

9         THE COURT:  That's something that should have been done

10   by now.  That's a central allegation in the complaint.

11        MR. RAMIREZ:  Judge, if you look at Document 13 Page

12   62, there's an order from the --

13        THE COURT:  I don't want to talk about anything else

14   now.  I have to dive into this record and figure it out.

15        MR. RAMIREZ:  But that's when the judge addresses your

16   question in the footnote.

17        THE COURT:  All of you have been living with this case

18   in one way, shape or form for years, I have not, so I've got to

19   try to figure it out both factually and procedurally, and I'll

20   do the best I can.  But I want to thank you all very much for

21   your help.  Okay?  We're in recess.

22        COURT SECURITY OFFICER:  All rise.

23        (PROCEEDINGS CONCLUDED)

24

25

1

2                                  *  *  *  *  *

3                        C E R T I F I C A T E

4    I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

5
     3/22/2019              /s/ Dawn M. Savino
6    Date                   DAWN M. SAVINO, RPR

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25