## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NLG, LLC,<br><br>     Debtor. | Chapter 7<br><br>Case No. 21-11269 (JKS) |
| CHRIS KOSACHUK,<br><br>     Plaintiff,<br><br>        v.<br><br>SELECTIVE ADVISORS GROUP, LLC,<br>and 9197-5904 QUEBEC, INC.,<br><br>     Defendants. | Adv. Pro. No. 22-50421 (JKS)<br><br>**Related Adv. D.I. 8, 9, 15, and 16** |

## <u>OPINION</u>

Before the Court in this adversary proceeding are two issues: (i) subject matter jurisdiction and (ii) abstention. These issues were raised in a motion to dismiss filed by the defendants Selective Advisors Group, LLC ("<u>Selective</u>") and 9197-5904 Quebec, Inc. ("<u>Quebec</u>," and together with Selective, the "<u>Defendants</u>") in response to a complaint filed by Chris Kosachuk ("<u>Kosachuk</u>"). For the reasons set forth below the Court holds that it does not have subject matter jurisdiction to hear the underlying matter; and, even if the Court did have jurisdiction, the Court would abstain from hearing the underlying matter.

## JURISDICTION

The Court has jurisdiction to determine whether it has subject matter jurisdiction over this adversary proceeding.[1]

## BACKGROUND & HISTORY OF LITIGATION

The following facts are taken from the complaint and the documents attached to the complaint. The Court also takes judicial notice of the existence of certain motions, judicial decisions, and other public filings submitted in this adversary proceeding, the main bankruptcy case, and the other related adversary proceedings.[2]

### A.    The Involuntary Bankruptcy Case and Appointment of the Trustee

On September 24, 2021, Kosachuk filed an involuntary petition for relief under Chapter 7 of title 11 of the Bankruptcy Code against NLG, LLC ("NLG" or "Debtor"). Kosachuk, the founder of NLG, was the sole petitioning creditor. NLG did not answer the involuntary petition. No party objected to, moved to dismiss, or otherwise challenged the involuntary petition. On January 7, 2022, the Court entered the Order for Relief in an Involuntary Case.[3]

On the same day, the United States Trustee appointed the Alfred T. Giuliano as the interim Chapter 7 trustee (the "Trustee"), which appointment remains in effect.[4]  The Trustee is

---

[1] *Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.)*, 435 B.R. 894, 900 (Bankr. D. Del. 2010) (*citing Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376–77, 60 S.Ct. 317, 84 L.Ed. 329 (1940) (holding that a federal court has authority to determine whether it has subject matter jurisdiction over a dispute).

[2] Fed. R. Evid. 201.

[3] D.I. 10.

[4] D.I. 12.

now the sole fiduciary for NLG and is responsible for recovering all assets of the estate and

prosecuting the causes of action held by the estate.[5]

## B. The Property

The dispute at the heart of the bankruptcy case and this adversary proceeding, begins

with the "property." In 2002, Kosachuk formed NLG to facilitate the sale of real property

located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") to Liza Hazan ("Hazan").

To fund the purchase of the Property, Hazan executed a promissory note in favor of NLG

in the original principal amount of $1,275,000, as well as a purchase money mortgage to secure

the debt. Shortly after the transaction, in 2007, Hazan defaulted on the promissory note for

failure to make payments ("NLG's Default Judgment").

As explained in detail below, for more than a decade, NLG and/or Kosachuk and Hazan,

Selective, and Quebec, have engaged in protracted litigation, spanning multiple jurisdictions,

related to the Property.[6]

## C. The Adversary Proceedings in this Bankruptcy Case

In the Bankruptcy Case alone three adversary proceedings have been pursued involving

litigation over the Property and the promissory note issued for Hazan to purchase the Property,

the third of which is at issue in this Opinion.

---

[5] *Mini-Miners, Inc. v. Lansberry (In re Lansberry)*, 177 B.R. 49, 55 (Bankr. W.D. Pa. 1995) ("With his appointment, the chapter 7 trustee in the above cases became the sole representative of debtors' estates. As trustee, he became the successor-in-interest to all pre-petition causes of action belonging to debtors." (citations omitted). *See also Bauer v. Com. Union Bank, Clarksville, Tennessee*, 859 F.2d 438, 441 (6th Cir. 1988) ("It is well settled that the right to pursue causes of action formerly belonging to the debtor—a form of property under the Bankruptcy Code—vests in the trustee for the benefit of the estate." (citations and quotation marks omitted)); *In re Ozark Rest. Equip. Co., Inc.*, 816 F.2d 1222, 1225 (8th Cir. 1987) ("Any of these actions that are unresolved at the time of filing then pass to the trustee as representative of the estate, who has the responsibility under Section 704(1) of asserting them whenever necessary for collection or preservation of the estate." (citations omitted)).

[6] This summary is not intended to be a complete list of all litigation between and among the parties.

### i.    Kosachuk v. Quebec, Adv. Pro. No. 21-51264

On November 8, 2021, Kosachuk and Olga Solomatina filed a Complaint for Declaratory

Relief and Judgment against Quebec and Selective, Adv. Pro. No. 21-51264-JKS, seeking to

recover "assets wrongfully misappropriated from NLG."  That complaint asserted NLG's assets

were misappropriated by Selective "using a sham Judgment by Confession from the case of

*9197-5904 Quebec, Inc. v. NLG, LLC*, Case No. 2012-101875 in the Supreme Court for the State

of New York" (the "Quebec Judgment").[7]  In other words, the adversary action challenged the

validity of the Quebec Judgment.  This Court entered an order approving a Stipulation and Order

Dismissing Complaint without Prejudice.[8]

### ii.    NLG v. Selective, Adv. Pro. No. 22-50086

Prior to the Petition Date, on April 10, 2018, Kosachuk, on behalf of NLG, commenced

an action in the United States District Court for the Southern District of Florida (the "Florida

District Court") against Defendant Selective captioned, *NLG, LLC v. Selective Advisors Group,*

*LLC*, Case No. 1:18-cv-21398.  On January 18, 2022, that action was transferred to the United

States District Court for the District of Delaware, and subsequently transferred to this Court and

docketed as Adv. Pro. No. 22-50086-JKS.[9]  Upon being transferred to this Court, the Trustee, as

representative of the NLG's estate, prosecuted the action for the benefit of the NLG.  The

---

[7] *See* Adv. D.I. 5.

[8] *See* Adv. Pro. No. 21-51264, Adv. D.I. 54.

[9] On May 18, 2022, at the request of the Trustee, and over Selective's objection, the Court entered an Order holding the Adversary Proceeding in abeyance for ninety days (the "First Abeyance Order") to allow the Trustee time to investigate the facts and potentially resolve the adversary proceeding without protracted litigation.  Adv. D.I. 61. On August 16, 2022, the Trustee and Selective filed a joint motion seeking a thirty-day extension of the First Abeyance Order (the "Joint Abeyance Motion"), which Kosachuk opposed.  Adv. D.I. 72 and 77.  Following a contested hearing on the Joint Abeyance Motion, the Court granted the motion and entered an Order extending the First Abeyance Order through and including October 14, 2022.  D.I. 80.

complaint seeks declaratory judgment that the Quebec Judgment is a "sham" and a declaration that the Quebec Judgment be vacated, set aside, and stricken. The parties have agreed to dismiss this adversary action.[10]

### iii.    Kosachuk v. Quebec and Selective, Adv. Pro. No. 22-50421

Although discussed in more detail below, Kosachuk commenced the instant adversary proceeding on September 26, 2022, by filing a Complaint for Declaratory Judgment against Quebec and Selective, Adv. Pro. No. 22-50421-JKS, seeking to cancel the indebtedness caused by the Quebec Judgment, *nunc pro tunc* to the date of entry January 22, 2012.[11] In effect, this is the third adversary action in this bankruptcy case seeking essentially the same relief - namely, a declaration that the Quebec Judgment, a judgment entered in 2012 by the New York state court, is void. This adversary proceeding is the subject of the pending Motion to Dismiss and this Opinion.

### D. The Parties to this Adversary Proceeding

#### i.    Plaintiff: Kosachuk

Kosachuk formed NLG, a Delaware limited liability company, in 2002. Kosachuk served as the sole manager of the company. Kosachuk is also a creditor of NLG.

#### ii.    Defendants: Quebec and Selective

On February 22, 2012, the New York Supreme Court entered a judgment by confession in the amount of $5,000,225 (as referred to above, the "Quebec Judgment") against NLG in favor

---

[10] *See* Adv. Pro No. 22-50086, Adv. D.I. 60.

[11] *See* Adv. Pro. No. 22-50421, Adv. D.I. 1. The Court entered an order granting an extension of time for the defendants to respond to this adversary proceeding. Adv. Pro. No. 22-50421, Adv. D.I. 4.

of Quebec.[12]  An affidavit in support of the Quebec Judgment was executed by Raymond

Houle[13] ("Houle").  Although Houle was, at the time, the president of Quebec, he professed in

the affidavit to act on behalf of NLG.

On April 21, 2014, Quebec domesticated its judgment against NLG in the Miami-Dade,

Florida Circuit Court; and then assigned the Quebec Judgment to Selective.

### E.  The interplay between NLG, Kosachuk, Hazan, Selective, Quebec, and the Quebec Judgment

In 2012, Selective moved to have NLG's Default Judgment against Hazan judicially

assigned to Selective as a form of payment of the Quebec Judgment.  The New York trial court

granted the motion and ordered the assignment ("Assignment") of the Default Judgment and all

of NLG rights and claims against Hazan to Selective.[14]  The New York Supreme Court

additionally ordered Selective to give a credit against the Assignment to NLG for payments that

NLG had already made towards satisfying the Quebec Judgment.  The Assignment has never

been vacated or set aside.  In 2014, Selective filed a satisfaction of the Default Judgment and the

mortgage and confirmed payment of a credit to NGL.[15]

---

[12] *See generally factual background in NLG, LLC v. Selective Advisors Grp., LLC*, No. 18-24272-CIV, 2019 WL 2255033, at *1 (S.D. Fla. Mar. 22, 2019).  On December 15, 2009, a New York money judgment against Kosachuk in an unrelated action (the "Lorret Judgment") was assigned to Quebec.  *Lorret v. Kosachuk*, Index No. 1038996/2004 (Sup. Ct. N.Y. Cnty. 2004).  Quebec domesticated the Lorret Judgment in Pennsylvania.  As set forth above, on February 16, 2012, an attorney for Quebec, entered a judgment by confession by NLG in favor of Quebec, as defined herein the Quebec Judgment, and domesticated the judgment in New York.  *9198-5904 Quebec, Inc. v. NLG, LLC*, Index No. 101875/12 (Sup. Ct. N.Y. Cnty. Feb. 22, 2012).

[13] *See* Adv. D.I. 1 (Complaint for Declaratory Judgment) at ¶ 19-20.

[14] Hazan's ex-husband, Sean Neil Meehan controls Quebec, Selective, and America Asset Management, LLC. *See* Bankr. Case No. 21-11269, D.I. 97 at p. 3.

[15] *NLG, LLC v. Selective Advisors Grp., LLC*, No. 18-24272-CIV, 2019 WL 2255033 at *1.

For over a decade, Kosachuk and NLG have asserted in multiple state and federal courts, and continue to assert in this Court, that the Quebec Judgment is a "sham judgment" and void *ab initio*; in the alternative.[16]

## F.  Litigation in the Florida Courts

The Eleventh Circuit Court of Appeals having adjudicated an appeal related to the Hazan Bankruptcy Case, as defined and discussed below, set forth the following succinct summary of the litigation between the parties and rulings of the Florida Courts:

> Litigation began in 2007 shortly after Hazan purchased the Property when NLG sued Hazan for breach of the purchase money promissory note. In April 2008, Judge Robert N. Scola of Florida's Eleventh Judicial Circuit in Miami-Dade County entered a default final judgment (the "Scola Judgment") against Hazan and in favor of NLG in the amount of $1,618,071.29 with 11 % interest per annum.
>
> NLG sued Hazan again in 2011, in the same state court, this time seeking to foreclose on the Mortgage.  In February 2014, Circuit Judge Spencer Eig issued an order finding, however, that NLG could not foreclose on the Property.  Rather, it could only recover the monetary Scola Judgment since it had elected a monetary remedy instead of foreclosure in its previous action (the "Eig Order").  NLG appealed this decision to Florida's Third District Court of Appeal.
>
> While all of this was happening, back in 2012, a foreign corporation called 9197-5904 Quebec, Inc. obtained a $5 million judgment against NLG in a wholly unrelated litigation in New York Supreme Court (the "Quebec Judgment").  Selective acquired the Quebec Judgment against NLG from 9197-5904 Quebec and recorded the judgment in the Circuit Court in Miami-Dade County. This case was assigned to Judge Peter Lopez.  Judge Lopez assigned NLG's interest in the Scola Judgment -- and all of its rights and claims against Hazan -- to Selective for the purpose of partially satisfying the Quebec Judgment, which NLG now owed

---

[16] *See* Adv. D.I. 1 (Complaint for Declaratory Judgment) at ¶ 6 ("Plaintiff seeks a declaration that the $5,000,225 indebtedness caused by the [Quebec Judgment] . . . is cancelled *nunc pro tunc* to the date of entry of February 22, 2012.").

to Selective (the "Lopez Assignment Order"). In August 2014, Selective filed a satisfaction of the Scola Judgment and the Mortgage in the Circuit Court, giving credit to NLG towards satisfying the Quebec Judgment.

After the Lopez Assignment Order, the Eig Order was reversed on appeal by Florida's Third District Court of Appeal. *NLG, LLC v. Hazan*, 151 So. 3d 455, 456–57 (Fla. Dist. Ct. App. 2014). On remand, and despite the fact that the Lopez Assignment Order assigned all of NLG's rights and claims against Hazan to Selective, Judge Monica Gordo (who had taken over the case from Judge Eig), entered a foreclosure judgment in favor of NLG in December 2014 (the "Gordo Foreclosure Judgment"). Selective unsuccessfully moved to intervene in this proceeding. The Gordo Foreclosure Judgment determined that NLG was entitled to more than $4.8 million, and set the Property for sale on January 12, 2016. The court also ruled that Hazan was entitled to a right of redemption pursuant to Fla. Stat. § 45.0315 -- that is, she could avert the sale before it took place by paying the $4.8 million judgment amount to NLG.

In sum, the Scola Judgment awarded NLG approximately $1.6 million for breach of the Note. The Eig Order concluded that NLG could not foreclose on the Property because it had made an election of remedies in the previous action before Judge Scola. The Lopez Assignment Order then assigned NLG's interest in the Scola Judgment and all of its rights and claims against Hazan to Selective. Lastly, the Gordo Foreclosure Judgment reversed the Eig Order, entered a foreclosure judgment in favor of NLG, set a date for the sale of the Property, and found that NLG was entitled to a foreclosure judgment in the amount of $4.8 million.[17]

## G. Ms. Hazan's Bankruptcy and Cristol Final Bankruptcy Judgment

On January 11, 2016, Hazan filed for chapter 11 bankruptcy in the Bankruptcy Court for the Southern District of Florida (the "Hazan Bankruptcy Case"), on the eve of a sheriff's sale of foreclosure on the Property.[18] NLG filed a proof of claim on account of the Promissory Note in the Hazan Bankruptcy Case.

---

[17] *NLG, LLC v. Horizon Hosp. Grp., LLC (In re Hazan)*, 10 F.4th 1244, 1247–48 (11th Cir. 2021) (footnote omitted).

[18] *In re Hazan*, 10 F.4th at 1247.

In August 2016, Selective, joined by Hazan, commenced an adversary proceeding,

against NLG in the Hazan Bankruptcy Case to determine the validity, priority, and extent of

NLG's liens on the Property.[19]

On November 1, 2017, after a multi-day trial, Judge A. Jay Cristol entered a Final

Judgment in favor of Selective, the Quebec Judgment Assignee, and Hazan and against NLG (the

"Cristol Final Bankruptcy Judgment").[20] The Cristol Final Bankruptcy Judgment found with

respect to the Property and NLG's asserted Mortgage on the Property:

> Satisfaction of the Note and Mortgage are recorded in the official
> records and several courts have recognized that Debtor's [Hazan's]
> debt to NLG has been paid, including the New York State Supreme
> Court, wherein Judge Jaffe found that NLG's judgment on the
> Note, the Scola Judgment, was judicially assigned to Selective and
> was thereafter satisfied.  Upon satisfaction, NLG was credited by
> Selective ... under the domesticated Quebec Judgment. [...]
>
> **This Court concludes that NLG has no further rights to any
> claims against Debtor with respect to the Note and Mortgage,
> as the public records of Miami-Dade County reflect that the
> Scola Judgment and consequently the Mortgage were assigned
> and satisfied, and the Property fully redeemed prior to
> foreclosure sale, as provided in the Gordo Foreclosure
> Judgment.  NLG's Proof of Claim #17, having been filed after
> the bar date, it is disallowed and the Court finds that NLG has
> no standing in this case based upon the Note, Mortgage, claim
> or lien emanating therefrom.[21]**

Bankruptcy Judge Cristol quieted Hazan's title to the Property as against all claims by

NLG.[22] Judge Cristol acknowledged that he could not act as an appellate court on any other

---

[19] *Id.*; *Hazan v. NLG, LLC (In re Hazan)*, Adv. Pro. 16-1439 (Bankr. S.D. Fla. 2016).

[20] *See* Case 16-01439-AJC, ECF No. 238; *see also* D.I. 84, Ex. D.

[21] *Id.* at 13 (emphasis added).

[22] Judge Cristol held that:

> NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at
> Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book

court's proceedings.  He concluded in the Cristol Final Bankruptcy Judgment that "[a]lthough

NLG argued that the Quebec Judgment was erroneous or invalid, it is a final judgment not

subject to appeal. [] Selective domesticated the Quebec Judgment in state court, before Judge

Lopez, and the order domesticating the judgment has become final and non-appealable."[23]

NLG appealed the Cristol Final Bankruptcy Judgment to the District Court[24] and to the

Eleventh Circuit Court of Appeals[25] – both of which affirmed the Cristol Final Bankruptcy

Judgment.[26]

---

> 26357 Pages 3948- 3949 CFN20080361591, the Note and the Mortgage
> recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's
> foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on
> December 4, 2015, the Gordo Foreclosure Judgment, recorded at Book 29902
> Pages 3737-3742 CFN 20150812181 affecting Debtor's homestead Property
> known as 6913 Valencia Drive, Miami, Florida 33109 with the following legal
> description: LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION
> 10 according to the Plat thereof, recorded in PLAT Book 157, Page 64, of the
> Public Records of Miami-Dade County, Florida have been satisfied and paid,
> and are deemed SATISFIED OF RECORD, and Debtor has good title to said
> Property against the claims or purported claims by, through, under, or against it
> by NLG, LLC and the title to the Property is forever quieted as to all claims of
> NLG, LLC.

Case 16-01439-AJC, ECF No. 238, at p. 14.

[23] Case 16-01439-AJC, ECF No. 238, at p. 7.

[24] *NLG, LLC v. Hazan*, No. 18-24272-CIV, 2019 WL 4541700 (S.D. Fla. Sept. 19, 2019), *aff'd sub nom. In re Hazan*, 10 F.4th 1244 (11th Cir. 2021).  The District Court stated:

> In the bankruptcy context, the doctrine of equitable mootness permits a court to
> dismiss an appeal on its lack of power to rescind certain transactions. [...]
> Having considered the factors relevant to a finding of equitable mootness, the
> Court finds that NLG failed to timely seek a stay of the Bankruptcy Judgment,
> despite warning from the Bankruptcy Court that failure to do so could make
> NLG's appeal moot; Hazan has substantially consummated the plan and has
> been discharged; the relief requested by NLG would require a piecemeal
> dismantling of the Plan; and the relief requested by NLG would adversely affect
> innocent third-party creditors who relied on the disallowance of NLG's claim in
> supporting the Plan.

*NLG, LLC v. Hazan*, No. 18-24272-CIV, 2019 WL 4541700 at *6.

[25] *In re Hazan*, 10 F.4th at 1247.

[26] On June 12, 2018, the Florida Bankruptcy Court in the Hazan Bankruptcy Case confirmed Ms. Hazan's Chapter 11 Plan of Reorganization, which included, among other things, language enjoining creditors and "creditors whose judgment are declared null and void (if any)" from "commencing, continuing, or employing any action, process, or act to collect, recover, or offset any such debts as personal liability of the Debtor, or from property of the Debtor . . .

## H.    Additional Post-Quebec Judgment Court Rulings

In addition to litigation in Florida, the following New York state and federal courts have addressed the validity of the Quebec Judgment:

- On September 30, 2019, Judge Denise Cote, United Sates District Court for the Southern District of New York ("NYDC"), entered an Opinion and Order in a proceeding filed by Kosachuk, as Plaintiff, with NLG, as Intervenor, against Selective, as Defendant, denying Kosachuk and NLG's request to declare the Quebec Judgment void (the "Cote September 30, 2019 Opinion");[27]

- On November 13, 2019, NYDC Judge Cote entered a Memorandum Opinion and Order denying rehearing of the Cote September 30, 2019 Opinion;[28]

- On January 7, 2020, the New York Supreme Court, Judge Shlomo Hagler, entered an Order denying NLG's vacatur of the Quebec Judgment, adopting in full the Cote September 30, 2019 Opinion;[29]

- On September 15, 2020, the United States Court of Appeals for the Second Circuit ("USCA, 2nd Cir.") entered a Summary Order affirming the Cote September 30, 2019 Opinion not to disturb the Quebec Judgment;[30] and

---

." *In re Hazan*, S.D. Fl. Bankr. Ct. Case No. 16-10389, D.I. 690 (June 12, 2018).  Further, on December 7, 2018, the Florida Bankruptcy Court in the Hazan Bankruptcy Case entered a Discharge Order, which, among other things, discharged Ms. Hazan pursuant to the provisions of 11 U.S.C. § 1141(d) from any debt that arose before the date of such confirmation and any debt of any kind specified in Section 502(g), 502(h) or 502(i) of Title 11 in accordance with the provisions of 11 U.S.C. § 1141(d).  *Id.* at D.I. 766 (Dec. 7, 2018).

[27] *Kosachuk v. Selective Advisors Grp.*, LLC, No. 19CV4844 (DLC), 2019 WL 4805742, at *1 (S.D.N.Y. Sept. 30, 2019).

[28] *Kosachuk v. Selective Advisors Grp., LLC*, No. 19CV4844 (DLC), 2019 WL 5965217, at *1 (S.D.N.Y. Nov. 13, 2019), *aff'd in part, vacated in part, remanded*, 827 Fed. App'x 58 (2d Cir. 2020).

[29] *9197-5904 Quebec, Inc. v. NLG, LLC*. N.Y. Sup. Ct. Case No. 101875-12 (Jan. 7, 2020); found attached as Ex. A to *9197-5904 Quebec, Inv. c. NLG, LLC*, N.Y. Sup. Ct. 101875/2012, NYSCEF Doc. No. 1 (June 11, 2020).

[30] *Kosachuk v. Selective Advisors Grp., LLC*, 827 Fed. App'x at 60.

- On October 14, 2020, on remand from the USCA, 2nd Cir., Judge Cote, NYDC, again denied Kosachuk and NLG's request to declare the Quebec Judgment void.[31]

In addition, and more recently, the New York state courts have denied the vacatur of the Quebec Judgment as follows:

- On March 4, 2021, the Supreme Court of the State of New York, Appellate Division, First Judicial Department ("NY Sup App Div.") dismissed NLG's appeal of Judge Shlomo Hagler's Order Denying Vacatur of the Quebec Judgment;[32]

- On June 1, 2021, the NY Sup App Div. denied reargument of its Order dismissing the appeal of Judge Shlomo Hagler's Order Denying Vacatur of the Quebec Judgment.[33]

### ABOVE-CAPTIONED ADVERSARY PROCEEDING

Kosachuk seeks cancellation of the indebtedness caused by the Quebec Judgment as of the date of entry on February 22, 2012.[34]  In response, the Defendants filed a Motion to Dismiss the Complaint for the following reasons: (i) this Court lacks subject matter jurisdiction over this action under the *Rooker-Feldman* Doctrine; (ii) Kosachuk lacks standing to proceed; (iii) the action is time-barred having been commenced more than six years after entry of judgment; and (iv) the doctrines of collateral estoppel and *res judicata* support dismissal.[35]

---

[31] *Kosachuk v. Selective Advisors Grp., LLC*, Case No. 19cv4844, 2020 U.S. Dist. LEXIS 190452 (S.D. N.Y. Oct. 14, 2020).

[32] *9197-5904 Quebec Inc. v. NLG, LLC*, N.Y. App. Div. Case No. 2020-02664, NYSCEF Doc. No. 23 (Mar. 4, 2021).

[33] *9197-5904 Quebec Inc. v. NLG, LLC*, N.Y. App. Div. Case No. 2020-02664, NYSCEF Doc. No. 30 (June 1, 2021).

[34] Adv. Pro. 22-50421, Adv. D.I. 1 at ¶¶ 39-42.

[35] Adv. Pro. 22-50421, Adv. D.I. 8 (motion to dismiss) and 9 (brief in support of motion to dismiss).

Following a status conference, on December 19, 2022, the Court entered an order establishing a briefing schedule on the Motion to Dismiss and limited consideration to the threshold issues of jurisdiction and abstention raised in the Defendants' Motion to Dismiss.[36] Thus, the Court's analysis is limited to the issues of jurisdiction and abstention.

## ANALYSIS

### A. Subject Matter Jurisdiction

#### i.    Standard of Review

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter, or if the plaintiff lacks standing to bring his claim. Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the Court's subject matter jurisdiction.

In reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply. In this regard, the Court must accept all factual allegations in the Complaint as true, and the Court may only consider the complaint and documents referenced in or attached to the complaint.[37] In reviewing a factual attack on jurisdiction, "the court may consider evidence outside the pleadings."[38]

In reviewing a factual challenge to the Court's subject matter jurisdiction, the Court is not confined to the allegations of the complaint, and the presumption of truthfulness does not attach

---

[36] The Court limited consideration of the Motion to Dismiss to jurisdiction and abstention as threshold issues. *See* Adv. Pro. 22-50421, Adv. D.I. 14 at p. 3; Adv. D.I. 15 (Plaintiff's Memorandum of Law in Opposition to Defendants' Memorandum of Law [Doc. 9] in Support of Motion to Dismiss Complaint [Doc. 8]); and Adv. D.I. 16 (Reply in Further Support of Motion to Dismiss Complaint).

[37] *Gould Elects, Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003) (citations omitted).

[38] *Gould Elecs. Inc.*, 220 F.3d at 176 (citations omitted).

to the allegations in the complaint.[39]  Instead, the Court may consider evidence outside the

pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing

on jurisdiction.[40]

Once the Court's jurisdiction is challenged, the plaintiff bears the burden of proving that

jurisdiction exists by "showing by a preponderance of the evidence that subject matter

jurisdiction exists."[41]  "[J]urisdiction must be shown affirmatively, and that showing is not made

by drawing from the pleadings inferences favorable to the party asserting it."[42]

### ii. *Rooker-Feldman* Doctrine

Under the *Rooker-Feldman* doctrine, "lower federal courts are precluded from exercising

appellate jurisdiction over final state-court judgments."[43]  "The *Rooker–Feldman* doctrine is

confined to cases of the kind from which it acquired its name: cases brought by state-court losers

complaining of injuries caused by state-court judgments rendered before the federal district court

proceedings commenced and inviting district court review and rejection of those judgments."[44]

In determining whether the *Rooker-Feldman* doctrine applies, the Court must look to the

following requirements: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of

---

[39] *Mortensen v. First Fed. Sav. & Loan*, 549 F.2d 884, 891 (3d Cir. 1977).

[40] *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir.1997).

[41] *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (citation omitted); *see also Samsung Elecs. Co. v. ON Semiconductor Corp.*, 541 F. Supp. 2d 645, 648 (D. Del. 2008).

[42] *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (*citing Norton v. Larney*, 266 U.S. 511, 515, 45 S. Ct. 145, 147, 69 L. Ed. 413 (1925)).

[43] *Lance v. Dennis*, 546 U.S. 459, 463, 126 S. Ct. 1198, 1201, 163 L. Ed. 2d 1059 (2006) (referring to *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923) and *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983)).

[44] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 281, 125 S. Ct. 1517, 1520, 161 L. Ed. 2d 454 (2005).

injuries caused by the state court judgment; (3) [that judgment was] rendered before the federal

suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state

judgment."[45]

Here, the Quebec Judgment, a state court judgment, was entered by the New York

Supreme Court against NLG in 2012. The action brought by Kosachuk seeks a declaration that

the Quebec Judgment is void *ab initio* and seeks to vacate the judgment *nunc pro tunc* to the date

of its entry. Kosachuk also seeks to "cancel the indebtedness" caused by the Quebec

Judgment.[46] In short, Kosachuk is complaining of injuries caused by the New York state court.

At bottom, the underlying litigation turns on the validity of the Quebec Judgment. Kosachuk

argues that this Court can use its equitable powers under 11 U.S.C. § 105 to review and declare

the Quebec Judgment invalid. The Court disagrees. The Bankruptcy Court is a court of limited

jurisdiction and cannot review and collaterally attack the 2012 Quebec Judgment under its

section 105 powers.[47] In other words, the *Rooker-Feldman* doctrine applies to the dispute

brought by Kosachuk.

Kosachuk argues that the *Rooker-Feldman* doctrine is inapplicable because he was not a

party to the Quebec Judgment, only NLG. However, the *Rooker-Feldman* doctrine may have

---

[45] *Cardillo v. Neary*, 756 F. App'x 150, 154 (3d Cir. 2018) (citations, quotation marks and modifications omitted).

[46] During the hearing on the dismissal of Adv. Pro. No. 22-50086, Kosachuk confirmed that he was asking the Court, in that adversary, to undo the Quebec Judgment. *See* Adv. Pro. No. 22-55086, Adv. D.I. 68 (Tr. of Hr'g Jan. 31, 2023), 47:17-20 ("THE COURT: So what Court judgments are you asking this Court to undo? MR. KOSACHUK: I'm asking this Court to undo one judgment, the 2012 sham judgment.").

[47] *Gillman v. Continental Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 211 (3d Cir. 2000) ("[S]ection 105(a) has a limited scope. It does not create substantive rights that would otherwise be unavailable under the Bankruptcy Code." (citations and internal quote marks omitted)); *In re Argose, Inc.*, 377 B.R. 148, 150 (Bankr. D. Del. 2007) ("Equitable remedies under section 105(a) are limited, however, and should be used only to further the substantive provisions of the Code." (citations omitted)).

preclusive effect when the parties, such as NLG and Kosachuk, are in privity.[48]  Kosachuk

previously made this identical argument in the United States District Court for the Southern

District of New York:

> Kosachuk argues that *Rooker-Feldman* cannot apply to him
> because, unlike NLG, he was not a party to state-court action when
> the 2012 [Quebec] Judgment was entered.  Citing *Lance*, he asserts
> that *Rooker-Feldman* does not bar actions by non-parties even if
> those parties were in privity with a state-court loser.  While
> Kosachuk is correct that *Rooker-Feldman* does not bar an action by
> nonparties "simply because, for purposes of preclusion law, they
> could be considered in privity with a party to the judgment," . . .
> the Court's decision in *Lance* does not prohibit the application of
> *Rooker-Feldman* here.
>
> None of the facts that the Court identified in *Lance* counsel against
> applying *Rooker-Feldman* to bar Kosachuk's claims.  Kosachuk is
> the founder and manager of NLG.  He controls NLG and has
> directed NLG's attempts to vacate the 2012 [Quebec] Judgment for
> years . . . Simply put, there is no claim that Kosachuk "did not
> participate in [the state-court litigation]," or that he was not in the
> position to ask the state court to review the 2012 [Quebec]
> Judgment.[49]

Here too, NLG and Kosachuk are in privity.  Kosachuk is the founder and sole member of NLG.

Kosachuk filed the involuntary petition to place NLG in bankruptcy.  Kosachuk filed a claim for

money lent to NLG.  While the Trustee is now the estate fiduciary, Kosachuk filed the instant

action.  Prior to the bankruptcy filing, Kosachuk controlled NLG's litigation.  The *Rooker-*

*Feldman* doctrine dictates that the state court is the appropriate forum for challenging the Quebec

Judgment.

---

[48] *Lance v. Dennis*, 546 U.S. 459, 465, 126 S. Ct. 1198, 1202, 163 L. Ed. 2d 1059 (2006).

[49] Adv. D.I. 16, Ex. 1 (*Kosachuk v. Selective Advisors Group, LLC,* Case No. 19-cv-4844 (S.D.N.Y Sept. 30, 2019))
at pp. 12-13.

Kosachuk argues that he is asking this court to "cancel the indebtedness caused by" the

Quebec Judgment because it was used to strip NLG of its primary asset (i.e. the Final Judgment

of Foreclosure against Hazan).  This is a distinction without a difference – at the heart of

Kosachuk's request is for this Court to reevaluate, cancel, or change the Quebec Judgment,

which this Court cannot do.  There is a final, non-appealable judgment from the New York state

court that this Court cannot simply "cancel" or "undo."

The *Rooker-Feldman* doctrine applies, and thus, this Court lacks subject matter

jurisdiction over this adversary proceeding.

## B.  Abstention

Even if this Court did have subject matter jurisdiction, the Court would abstain from

hearing this matter.  Although, federal courts should exercise abstention narrowly, in this case it

is warranted.  The Defendants assert two abstention arguments: (i) abstention under *Colorado*

*River* and (ii) abstention from hearing this suit based on the Court's inherent authority to manage

its own docket.

### i.   *Colorado River Abstention Doctrine*

*Colorado River* allows for abstention when there is a pending parallel court proceeding.

In other words, *Colorado River* speaks to duplicative lawsuits, whether in state or federal court.

> Abstention from the exercise of federal jurisdiction is the
> exception, not the rule.  The doctrine of abstention, under which a
> District Court may decline to exercise or postpone the exercise of
> its jurisdiction, is an extraordinary and narrow exception to the
> duty of a District Court to adjudicate a controversy properly before
> it.  Abdication of the obligation to decide cases can be justified
> under this doctrine only in the exceptional circumstances where the
> order to the parties to repair to the state court would clearly serve
> an important countervailing interest.  It was never a doctrine of

> equity that a federal court should exercise its judicial discretion to
> dismiss a suit merely because a State court could entertain it.[50]

Deferral to the parallel litigation may be influenced by the "vexatious or reactive nature of the

litigation."[51]  The *Colorado River* inquiry is a two party inquiry:

> The initial question is whether there is a parallel state proceeding
> that raises 'substantially identical claims and nearly identical
> allegations and issues.  If the proceedings are parallel, courts then
> look to a multi-factor test to determine whether "extraordinary
> circumstances" meriting abstention are present.[52]

Kosachuk claims that abstention should be denied because there is not a pending state court

action concerning the Quebec Judgment.  Although there has been significant litigation in New

York state court regarding the Quebec Judgment, based on the Court's review of other pending

litigation, Kosachuk is correct, there is no other pending litigation in which this Court could

abstain in favor of.  Thus, the Court will not abstain under the *Colorado River* abstention

doctrine.

---

[50] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813–14, 96 S. Ct. 1236, 1244, 47 L. Ed. 2d 483 (1976) (citation, quotation marks, and modifications omitted).

[51] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 at n. 20 (1983).

[52] *Simmons Realty Co. v. Bedford UST Holding Co., LLC*, No. 3:19-CV-182, 2020 WL 5530137, at *2 (W.D. Pa. Sept. 15, 2020) (citations, quotations marks, and modifications omitted).  The "extraordinary circumstances" are determined by a multi-factor inquiry:

> Courts in the Third Circuit look to six factors to determine whether
> "extraordinary circumstances" exist that warrant Colorado River abstention:
> (1) in an in rem case, which court first assumed jurisdiction over the property;
> (2) the inconvenience of the federal forum; (3) the desirability of avoiding
> piecemeal litigation; (4) the order in which jurisdiction was obtained;
> (5) whether federal or state law controls; and (6) whether the state court will
> adequately protect the interests of the parties.  While the Supreme Court has
> enumerated six factors, 'the decision whether to dismiss a federal action because
> of parallel state-court litigation does not rest on a mechanical checklist, but on a
> careful balancing of the important factors as they apply in a given case, with the
> balance heavily weighted in favor of the exercise of jurisdiction.

*Simmons Realty Co. v. Bedford UST Holding Co., LLC*, No. 3:19-CV-182, 2020 WL 5530137 at *2 (citations, quotation marks, and modifications omitted).

### ii.    Permissive Abstention

Pursuant to 28 U.S.C. § 1334(c)(1), a district court, "in the interest of justice, or in the interest of comity with state courts or respect for state law, [may abstain] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."[53] Courts consider twelve factors in determining whether permissive abstention is appropriate:

> 1.  the effect or lack thereof on the efficient administration of the estate;
>
> 2.  the extent to which state law issues predominate over bankruptcy issues;
>
> 3.  the difficulty or unsettled nature of applicable state law;
>
> 4.  the presence of a related proceeding commenced in state court or other non-bankruptcy court;
>
> 5.  the jurisdictional basis, if any, other than section 1334;
>
> 6.  the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
>
> 7.  the substance rather than the form of an asserted "core" proceeding;
>
> 8.  the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
>
> 9.  the burden of the court's docket;
>
> 10.  the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
>
> 11.  the existence of a right to a jury trial; and
>
> 12.  the presence of non-debtor parties.[54]

---

[53] 28 U.S.C. § 1334(c)(1).

[54] *LaRoche Indus., Inc. v. Orica Nitrogen LLC (In re LaRoche Indus., Inc.)*, 312 B.R. 249, 253–54 (Bankr. D. Del. 2004) (citation omitted).

The evaluation of these factors is not a "mathematical exercise."[55]

To begin, this action will have no bearing on the administration of the bankruptcy estate. The estate is not a party to this proceeding. The Trustee filed a notice of no assets to distribute[56] and has certified that the estate has been filly administered.[57] As fiduciary to NLG, the Trustee has taken no position regarding this adversary proceeding. This factor favors abstention.

Second, this adversary action is between two non-debtor parties and involves a state court dispute from 2012. At issue is state law involving the Quebec Judgment. This factor favors abstention.

Third, at issue with the Quebec Judgment is the validity of the New York state court ruling. As set forth above, New York state and federal courts have previously ruled on the validity of the Quebec Judgment (as has the Florida state and federal courts). There are no issues of a difficult or unsettled nature related to the applicable state law. As state law predominates the underlying issues, this factor weighs in favor of the state court deciding the issue (which it has).[58] This factor favors abstention.

Fourth, to the best of the Court's knowledge there is no parallel state court matter pending. This factor does not favor abstention.

---

[55] *Fruit of the Loom, Inc. v. Magnetek, Inc. (In re Fruit of the Loom, Inc.)*, 407 B.R. 593, 600 (Bankr. D. Del. 2009) (citations omitted).

[56] D.I. 120.

[57] D.I.122.

[58] *Official Committee of Unsecured Creditors v. Elkins (In re Integrated Health Servs., Inc.)*, 291 B.R. 615, 620 (Bankr. D. Del. 2003) (holding that "even if a matter does not involve unsettled issues of state law, where the state law issues so predominate the proceeding as they do in this case, this factor weighs in favor of having the state court decide it.").

Fifth, this Court's jurisdiction rests solely with 28 U.S.C. § 1334. There is no federal

question jurisdiction pursuant to 28 U.S.C. § 1132. This factor favors abstention.

Sixth, this matter originated with the Quebec Judgment in 2012 in New York state court,

it is remote in substance and time from the main bankruptcy case. More specifically, this matter

does not raise any bankruptcy law issues. This factor favors abstention.

Seventh, the instant adversary is not a "core" proceeding under 28 U.S.C. §157(b).    To

determine whether this matter is "core," the Court must consider the following:

> Proceedings "arising under" and "arising in" a case under the
> Bankruptcy Code are "core" proceedings. A proceeding "arises
> under" the Bankruptcy Code only if the Bankruptcy Code creates
> the cause of action or provides the substantive right invoked. The
> instant adversary proceeding does not "arise under" the
> Bankruptcy Code: Plaintiffs allege breach of contract, claims
> which solely involve state law. A proceeding "arises in" a case
> under the Bankruptcy Code if the proceeding has "no existence
> outside of the bankruptcy." The instant adversary proceeding does
> not "arise in" a case under the Bankruptcy Code: the ordinary
> contract dispute exists outside of bankruptcy.[59]

Here, this adversary proceeding arises under state law, not in a case under the Bankruptcy Code.

Thus, the adversary proceeding is not a "core" proceeding, and this factor favors abstention.

Eighth, as there are no "core" bankruptcy issues, severance of state law claims is not

necessary. This factor is neutral.

Ninth, this Court's docket is of no relevance in the Court's decision on this issue. The

Court will complete the work necessary in a timely fashion. This factor is neutral.

Tenth, for more than a decade, Kosachuk and/or NLG have pursued similar actions in

New York and Florida state and federal courts, and most recently in Hazan's personal

---

[59] *Fruit of the Loom, Inc. v. Magnetek, Inc. (In re Fruit of the Loom, Inc.)*, 407 B.R. at 601 (citations omitted).

21

bankruptcy case. While Delaware is an appropriate forum for the bankruptcy of a Delaware corporation; it is not an appropriate forum for the adversary proceeding. By filing the involuntary petition against NLG, Kosachuk created yet another forum to relitigate issues that have been previously decided. At bottom, this Bankruptcy Court cannot be one more forum for NLG and/or Kosachuk to pursue virtually identical claims to those NLG and Kosachuk have been litigating for over a decade. This factor strongly favors abstention.

Eleventh, none of the parties have requested a jury trial. This factor is neutral.

Twelfth, all parties to this Adversary Proceeding are non-debtors. Kosachuk brought this action to pursue his individual claims, if any, against the Defendants who are not debtors or creditors of NLG. NLG may have had similar claims against the Defendants; however, such claims are being dismissed contemporaneously herewith based on the requests of the parties. NLG's status as a debtor is insufficient to require the bankruptcy court to entertain all disputes involving NLG and Kosachuk. Thus, this factor similarly favors abstention.

The majority of the factors favor abstention. Additionally, those factors considered more substantial, such as the effect on the administration of the estate, whether the claims involve only state law issues, and whether the proceeding is core, as well as the apparent forum shopping, collectively indicate that the Court should abstain from hearing the underlying action. Thus, the Court would have permissively abstained from hearing this dispute.

## CONCLUSION

For the reasons set forth above, the Court holds that it does not have subject matter jurisdiction to hear this matter under the *Rooker-Feldman* doctrine. The Court further finds that even if it did have subject matter jurisdiction, the Court would permissively abstain from hearing this proceeding. An order will be issued.

Dated: February 16, 2023

J. Kate Stickles
United States Bankruptcy Judge